OPINION OF THE COURT
Harold Hyman, J.
Defendant, Oxhandler, asserting a right to proceed against the third/fourth-party defendant, Eddy, upon the basis of “Contractual Indemnification”, has now produced the documentation, requested by the court in its order of January 22, 1981, which it claims supports its position. The movant’s contention is opposed by Eddy.
The respective vertical positions of the parties are:
“General Contractor” is E. W. Howell Co; Oxhandler is Howell’s “subcontractor”; and Eddy is the “sub-subcontractor” of Oxhandler.
The documentation consists of the following items, to which the court will address itself, namely:
*968 A “work order” by Oxhandler to Eddy dated August 27, 1975, which, in pertinent part, states: “Kindly forward copies of insurance certificates in the amounts called for in the specifications, copy attached, prior to the start of any work at the site.” (Emphasis supplied.)
Concededly, attached to the afore-mentioned “work order” was part of a copy of the printed agreement between Oxhandler, movant, and its general contractor, Howell, by whom it, Oxhandler, was employed as “subcontractor”; the part attached as aforestated only referred to “Article 9: Insurance” and a part of “Article 10 — Working Conditions.” It is within these documents that Oxhandler posits its claim for “Contractual Indemnification”^
The main thrust of Oxhandler’s contention is that “Article 9: Insurance”, inherently allows it “Contractual Indemnification” against Eddy, its sub-subcontractor. Bearing the respective vertical positions in mind, “Article 9: Insurance”, provides, in pertinent part, as follows:
“ (a) The Subcontractor shall maintain such insurance as will protect him from claims under Workmen’s Compensation Acts and from any other claim for damage or personal injury including death which may arise from operation under this contract. Certificate of such insurance shall be filed with the contractor and shall be subject to his approval for adequacy of protection. Limits to be as stated below.
“(b) If any work specified by this contract is re-sublet by the subcontractor, the subcontractor shall secure Certificates of Workmen’s Compensation and Public Liability Insurance including Contingent Liability from the subcontractor actually furnishing labor, and file same with E. W. Howell Co. for the completion of their records. Such Certificates are to include a 10-days cancellation clause with notification to E. W. Howell Co.
“(c) The Subcontractor hereby assumes entire responsibility and liability for any and all damage or injury of any kind or nature whatever * * * to all persons, whether employees of the subcontractor or otherwise * * * caused by, resulting from, arising out of, or occurring in connection with the execution of the work provided for in this Contract; and if any person shall make a claim for * * * injury as *969 hereinabove described, whether such claim be based upon the Owner or E. W. Howell Co. alleged active or passive negligence or participation in the wrong or upon any alleged breach of any statutory duty or obligation on the part of the Owner or E. W. Howell Co., the Subcontractor agrees to indemnify and save harmless the Owner and E. W. Howell Co. * *.* from and against any and all loss, expense, damage, or injury that the Owner or E. W. Howell Co. may sustain as a result of any such claim and the Subcontractor agrees to assume, on behalf of the Owner and E. W. Howell Co. the defense of any action at law or in equity, which may . be brought against the Owner or * * * Howell upon such claim and to pay, on behalf of the Owner or* * * Howell upon their demand, the amount of any judgment that may be entered against the Owner or * * * Howell in any such action. Insurance coverage for this liability shall be provided and the Certificate shall so indicate.” (Emphasis supplied.)
Further, attached to the above is a document entitled:
“Re: Alterations and Additions for Grace Church, New York, N.Y.
“Required Insurance Coverage
“The Subcontractor agrees to carry the following insurance :
“1. Comprehensive General Liability Insurance with Contractual, Completed Operations.”
It is the opinion of the court that since “Eddy” is, for all intents and purposes, a “subcontractor” of Oxhandler, and the “Work Order” of August 27, 1975 by Oxhandler to Eddy requires Eddy to “forward copies of your insurance certificates in the amounts called for in the specifications, copy attached, prior to the start of any work at the site”, that the “specifications” referred to and the meanings thereof which must be given to same, in this instance, are clear; there is no ambiguity (Strumlauf v Sandine Originals, 70 AD2d 911).
In article 9, the item designated hereinabove as “(a)” thereof, at best, if interpreted as movant requests, merely requires the subcontractor to maintain such insurance *970 “as will protect kirn” (subcontractor) which may arise from operations under the contract, and to file certificates of insurance with Oxhandler, his direct (sub) contractor for its approval; and, therefore, interpreting such language in the light proposed by Oxhandler, the word “him” would refer solely to Eddy, its subcontractor.
Item “ (b) ” above provides that subcontractor, Oxhandler, who, if it shall “re-sublet” work (to Eddy), shall also secure certificates of public liability insurance from Eddy and file same with Howell.
As to item “ (c) ”, therein the court is faced with a multiprovision. From the first part thereof movant would have Eddy assume the entire responsibility and liability for any injury occurring in connection with the execution of the work provided for in the contract insofar as it would effect the possible liability of Oxhandler. This interpretation the court will not give to it, for such provision specifically provides for the indemnification to run only to owner and Howell not to Oxhandler. Even though it provides for the “subcontractor’s” assumption of liability, and even if it be assumed that the usage of the word “subcontractor” would refer to “Eddy”, it does so limited strictly to such liability purported to be of or resulting to the “Owner or Howell”. It does not in any way even suggest that the subcontractor to whom Oxhandler may sublet the contract, that the said sub-subcontractor of Oxhandler is to indemnify Oxhandler or to contractually hold said subcontractor, Oxhandler, harmless. What is more the work order merely required Eddy (sub-subcontractor) to forward its insurance certificate as “called for in the specifications”, but such insurance was for owner and Howell’s benefit alone, not in anywise does it require that such insurance run to the benefit of Oxhandler.
In response to the contention of Oxhandler in its argument to the court that it was “its intention” that Eddy cover “it” with such insurance, the court finds that such is not what the provision contained in the so-called “Specification” specifically and unambiguously provides for. Since that document was used by movant in making up its own “Work Order” to Eddy it is bound by the terminology and *971 terms therein contained, and, if there be any ambiguity in the language used (which the court finds does not exist therein), it must be resolved against he who drew such agreement, the maker thereof (Taylor v United States Cas. Co., 269 NY 360, mot for rearg den 270 NY 611; Evelyn Bldg. Corp. v City of New York, 257 NY 501), even though it be on a printed form supplied to it by another (Tanenbaum v Hallett, 269 App Div 174). One who provides a written contract meaning one thing should not be permitted to seek a construction thereof to mean another thing more to his advantage (Bintz v City of Hornell, 268 App Div 742, affd 275 NY 628).
Had it been Oxhandler’s intention to have Eddy contractually indemnify it or to hold it harmless, it would have been very simple to have merely added the word “sub-subcontractor” or “Eddy” to the very beginning and/or center of the paragraph designated “(c)” above.
It is the court’s opinion that the movant-defendant Ox-handler is not entitled to assert a claim for “Contractual Indemnification” from the third/fourth-party defendant, Eddy, based upon such agreement; and, therefore, that application of Oxha'ndler is denied. Such denial is solely as to “Contractual Indemnification”. As to common-law indemnification and/or contribution, the motion is granted.
Since the issue of “Contractual Indemnification” was held in abeyance pursuant to the order of the court dated January 22, 1981, the present decision shall be deemed to supplement such latter mentioned order. Therefore, a resettlement of such latter order is appropriate and is herewith required, on notice to all parties in the action, to be submitted expeditiously since the trial of this action is presently very imminent.