**In re Roy and Mary ROBERTS, Debtors.**

**Bankruptcy No. 181–11706–21.**

United States Bankruptcy Court,
E. D. New York.

June 14, 1982.

**916**

Norman P. Horwitz, P. C., New York City, for debtors; Bruce L. Weiner, Brooklyn, N. Y., of counsel.

Philip Irwin Aaron, P. C., Jericho, for Ninth Federal Sav. and Loan Ass'n; Stuart Gelberg, Jericho, of counsel.

Kenneth Kirschenbaum, Garden City, trustee.

### OPINION

CECELIA H. GOETZ, Bankruptcy Judge:

In this Chapter 13 proceeding brought under Title 11 of the United States Code, the debtors, Roy and Mary Roberts, have objected to the claim filed by Ninth Federal Savings and Loan Association ("Ninth Federal"), a secured creditor holding a mortgage on the debtors' principal residence.

Although Ninth Federal originally opposed confirmation of the debtors' plan, which has as its principal objective curing arrearages on the mortgage held by Ninth Federal, the parties have resolved all differences between themselves, except the figure, if any, to be allowed Ninth Federal for attorneys' fees as part of the claim to be paid under the plan.[1]

### I.

### THE STANDING OF THE DEBTORS

Before the merits of the debtors' objection can be reached, a procedural issue raised by Ninth Federal must be resolved. Ninth Federal questions the debtors' standing to object to its claim. 11 U.S.C. § 502(a) provides that a claim filed under § 501 is allowed "unless a party in interest * * * objects." Ninth Federal asserts that a Chapter 13 debtor is not a party in interest. That position is lent some support by the authoritative text, *Collier on Bankruptcy*, which evidently deems the issue to be controlled by Bankruptcy Rule 306(b) and concludes that "it is the better view that the debtor himself is not a party in interest within the meaning of Rule 306(b)." 3 *Collier on Bankruptcy* § 502.01, at 502–12 (15th ed. 1982). But *Collier* suggests that in the redraft of the bankruptcy rules made necessary by the 1978 legislation, "there should be some inclination to concede to the debtor a role beyond that of a mere passive agent for the trustee in the matter of the allowance of claims against the debtor's assets particularly in respect of such claims which will survive the debtor's discharge." *Id.* at 502–12—502–13.

Essentially, denial to a debtor of the status of a party in interest under Bankruptcy Rule 306(b) has rested on the lack of a pecuniary interest in an insolvent debtor in how his assets are distributed. 3 *Collier on*

---

1. Decision of this issue has been delayed because it appeared that the entire proceeding might be mooted. In order to avoid prejudice to the secured creditor, the Roberts' plan was confirmed pending decision of the amount to be paid on account of the creditor's attorneys' fees. On April 9, 1982, the Chapter 13 trustee moved to dismiss or convert the proceeding because the debtors were behind on their payments. However, that motion, which was supported by Ninth Federal, has been withdrawn and the plan is continuing in effect, requiring decision of the question of attorneys' fees.

*Bankruptcy* ¶ 57.17[2.1], at 275–77 (14th ed. 1977). The controlling considerations were well set forth by the Eighth Circuit in *Kapp v. Naturelle, Inc.*, 611 F.2d 703, 706–07 (8th Cir. 1979):

> "The term 'party in interest' is not defined in the Act. Courts construing the provision have reasoned that the interest must be a pecuniary interest in the estate to be distributed. Thus, since the bankrupt is normally insolvent, he is considered to have no interest in how his assets are distributed among his creditors and is held not to be a party in interest. *In re Woodmar Realty Co.*, 241 F.2d 768 (7th Cir. 1957); *In re Pramer*, 131 F.2d 733 (7th Cir. 1942); *Gregg Grain Co. v. Walker Grain Co.*, 285 F. 156 (5th Cir. 1922), *cert. denied*, 262 U.S. 746, 43 S.Ct. 522, 67 L.Ed. 1212 (1923). However, when it appears that, if the contested claims are disallowed, there may be a surplus of assets to be returned to the bankrupt, the bankrupt is considered to have standing to contest the claims. *In re Community Neighbors, Inc.*, 287 F.2d 542 (7th Cir. 1961); *In re Woodmar Realty Co., supra.* *See generally* 3 Collier on Bankruptcy ¶ 57.17[2.1] (14th ed. 1977); Annot., 64 A.L.R.2d 889 (1959). *Cf., In re J. M. Wells, Inc.*, 575 F.2d 329 (1st Cir. 1978); *Hartman Corporation of America v. United States*, 304 F.2d 429 (8th Cir. 1962) (the bankrupt is not a 'person aggrieved' within the meaning of 11 U.S.C. § 67(c) and lacks standing to appeal from an order of the bankruptcy court allowing or disallowing claims unless he has demonstrated a pecuniary interest in the outcome)." (Footnote omitted) *Id.*

As the quotation shows, where a pecuniary interest exists, standing has been accorded a debtor and there can be no question of the pecuniary interest of a Chapter 13 debtor in the claims which will have to be paid out under his plan. Since the claims are paid out of current income, the higher the claim, the greater the impact on the debtor and his dependents. A debtor is directly affected by each and every claim filed. No one has a greater interest in seeing that no claim is allowed that should be disallowed, and that no claim is allowed for a greater amount than the maximum to which the creditor is entitled. Words would be drained of their ordinary meaning if a debtor were not deemed to be a "party in interest."

*Collier* appears to have overlooked in its discussion of § 502 of the Code (which applies to cases under Chapters 11 and 13, as well as Chapter 7 (11 U.S.C. § 103(a))) that objections to claims in Chapter XIII proceedings under the Act did not fall under Bankruptcy Rule 306, but under Bankruptcy Rule 13–307. Although the language of Bankruptcy Rule 13–307, insofar as pertinent, is identical with Bankruptcy Rule 306, *Collier* in its pre-Code commentary did not view that rule as precluding a Chapter XIII debtor from objecting to a claim independent of the trustee. *See* 15 *Collier on Bankruptcy* ¶ 13–307.04, at 13–307–5 (14th ed. 1977). In short, whatever the rule may have been in liquidation proceedings, the debtor's right to object to claims in a rehabilitation proceeding has never been questioned. Accordingly, this Court entertains no doubt whatsoever of the standing of the debtors herein to object to the claims of Ninth Federal.[2]

2. Another procedural issue raised by the Chapter 13 trustee, but which he has not pressed, deserves clarification. The Chapter 13 trustee suggests that Ninth Federal's claim was not properly filed because it was submitted by a law firm on its behalf unaccompanied by any power of attorney. In view of the number of claims filed in this fashion, the question is of some importance. However, it appears to be one which is addressed and definitively settled by Bankruptcy Rule 910 which continues to be applicable to Code cases. Bankruptcy Reform Act of 1978, Title IV, § 405(d), Pub.L. 95–598. Subsection (a) of Bankruptcy Rule 910 authorizes a creditor to act in a bankruptcy proceeding on his own behalf or by an attorney. Subparagraph (c) of Bankruptcy Rule 910 requires the authority of any agent representing a creditor to be evidenced by a power of attorney, except respecting "the execution and filing of a proof of claim." *Id.* The explicit exception makes clear that a power of attorney need not accompany a proof of claim. Respecting proofs of claim, *Collier on Bankruptcy* says that a "separate power [of attorney] is not necessary for the filing of a proof of claim." 3

## II.

### THE FACTS

The facts are not in dispute and can be briefly stated. The debtors, Roy Roberts, and his wife, Mary Roberts, live at 218–30 110th Avenue, Queens Village, New York. The present value of their home is said to be $45,000, and was purchased with the help of a mortgage given by Ninth Federal carrying 8½ percent interest. The current monthly payments to Ninth Federal are $288.

Mr. Roberts is employed as a splicer by Con Edison; his wife is unemployed; she takes care of their three children, ages 17, 13, and 3. Sometime in 1980, the Roberts fell behind on their mortgage payments. On April 14, 1981, Ninth Federal wrote them, advising them that the matter had been referred to an attorney for the commencement of foreclosure proceedings, and that they would thereafter be required to pay legal fees, as well as past-due payments and late charges. The matter was, in fact, referred on that day to the law firm of Philip Irwin Aaron, P. C. ("Aaron"), which was instructed to commence foreclosure proceedings.

On May 21, 1981, prior to the initiation of such foreclosure proceeding, Mr. and Mrs. Roberts filed a Chapter 13 petition. Under their plan, $150 a month was to be paid the Chapter 13 trustee for thirty-six months. From this sum, the Chapter 13 trustee was to pay off the mortgage arrears to Ninth Federal stated to total $1,646.41, and various other obligations of the debtors. Unsecured creditors were to receive approximately 30 percent of what was owed them.

In order to demonstrate their ability to make the payments under the plan, the Roberts submitted a budget which allows all five members of the family only $30 a month for clothing for the life of the plan, and $10 a month for newspapers, periodicals, and books, including school books, although two of the children are of school age. The total allowance for recreation for these five people is $15 a month.

Ninth Federal, prior to receiving notice of the Chapter 13 proceeding, but after that proceeding had begun, began a foreclosure proceeding in the state court. In connection with that proceeding, Philip Irwin Aaron, Esq., a member of Aaron, affirms that he has expended three hours of his own time, and 1.75 hours of his secretary's time, and has incurred, and will incur, expenses of $273. According to Mr. Aaron, if the Chapter 13 plan is successfully completed, it will require an additional hour of work to discontinue the foreclosure proceeding. His affirmation adds that his office, which handles between 400 and 600 foreclosure proceedings a year, has adopted a base fee schedule which provides for a fee in the amount of $350 for foreclosure, and an additional fee of $150 for discontinuance of such proceeding should the debtor complete a Chapter 13 program; that the loan made by Ninth Federal is guaranteed by the Federal Housing Administration, and "they have found that this schedule is fair and reasonable." Mr. Aaron states that his normal billing rate for comparable nonbankruptcy foreclosure proceedings is $150 an hour. For the foreclosure proceeding alone, Ninth Federal requests attorneys' fees and expenses of $773.

Ninth Federal objected to the debtors' plan on several grounds: the plan did not include its legal fees and expenses which Ninth Federal calculated to be $1,223; the plan did not allow it interest on its arrearages, and also, according to Ninth Federal, the plan understated the amount of those arrearages, put by Ninth Federal at $2,304.72. Ninth Federal filed a proof of claim consistent with those figures.

The parties have agreed that at the time the petition was filed, Mr. and Mrs. Roberts were in arrears on their mortgage in the amount of $2,105.11, not $2,304.72 as claimed by Ninth Federal, and owed late charges in the amount of $102.16, so that Ninth Federal was owed in all $2,207.27. Further, it has been agreed that this amount will be repaid, with 12.5 percent

*Collier on Bankruptcy* ¶ 57.05[4], at 152 (14th ed. 1977).

interest, over the life of the plan. Based on this agreement, the debtors filed an amended plan increasing their monthly payments to $170 per month. What remains in dispute is the legal fees, if any, to be paid Ninth Federal which is seeking payment in the plan of $1,223 based on legal fees and disbursements in the foreclosure proceeding and in the Chapter 13 proceeding.

In order to permit immediate confirmation, the debtors' plan presently provides for the payment of $600 in attorneys' fees to Ninth Federal. This was done at the direction of the Court, which stated at the time that the inclusion of this figure in the plan was to be without prejudice to either party.

With reference to the Chapter 13 proceeding, Stuart Gelberg, Esq., an associate employed by Aaron, states that he has spent 11 hours 25 minutes, including travel time, in connection with the present matter, and that he has incurred expenses, including transportation, of $52.53. He says his normal billing rate for comparable nonbankruptcy services is $75 per hour. No total figure is given for his services in the Chapter 13 proceeding, but the total amount requested for all legal work is $1,223.

The only provision in Ninth Federal's mortgage dealing with attorneys' fees is Paragraph 17, part of the printed matter, which reads, in part:

"That upon any default by the Mortgagor in the compliance with, or performance of, any of the terms, covenants, or conditions of this mortgage or of the bond secured hereby, the Mortgagee may at its option remedy such default: and that all payments made by the Mortgagee to remedy a default by the Mortgagor as aforesaid (including reasonable attorney's fees) and the total of any payment or payments due from the Mortgagor to the Mortgagee and in default, together with interest thereon at the rate set forth in the bond secured hereby shall be added to the debt secured by this mortgage and shall be repaid to the Mortgagee upon demand."

## DISCUSSION

One of the significant innovations made by the new Bankruptcy Code is the ability given homeowners to stay foreclosure proceedings and cure arrearages on their mortgages while sheltered by Chapter 13. The key sections are §§ 1322(b)(2) and (b)(5). They must be read together. The former excludes from the power otherwise enjoyed by a debtor to modify the rights of holders of secured claims any claim which is secured only by a security interest in real property that is the debtor's principal residence. However, § 1322(b)(5) provides that notwithstanding the prohibition against modification, a Chapter 13 plan may "provide for the curing of any default within a reasonable time and maintenance of payments while the case is pending on any * * secured claim on which the last payment is due after the date on which the final payment under the plan is due." Section 1322(b)(5) was specifically intended by Congress to apply to a mortgage debt. H.Rep. No.95–595, 95th Cong., 1st Sess. 429 (1977), U.S.Code Cong. & Admin.News 1978, pp. 5787, 6384. In sum, although the rights of a mortgagee may not be modified, a homeowner may cure a default under a mortgage through a Chapter 13 plan up to the time of final judgment of foreclosure or sale. *In re Taddeo*, 9 B.R. 299, 7 B.C.D. 422, 4 C.B.C.2d 185 (Bkrtcy.E.D.N.Y.1981), *aff'd*, 15 B.R. 273, 8 B.C.D. 679, 5 C.B.C.2d 1309 (E.D.N.Y.1981), *appeal pending; In re Pearson*, 10 B.R. 189, 7 B.C.D. 567, 4 C.B.C.2d 57 (Bkrtcy.E.D.N.Y.1981).

Chapter 13 has proved a great boon to many debtors in the Eastern District. Steadily-rising real estate taxes, the escalating costs of heating, and inflation generally have created great hardship for small homeowners. Large numbers of them, despite the greatest of efforts, have fallen behind on their mortgage payments. Often their only hope of saving their home, which is the core of their family life, lies in Chapter 13. However, it is a measure of last resort: in order to utilize Chapter 13, a debtor who has had difficulty in meeting his normal obligations undertakes not only

to stay current with these commitments, but, in addition, to pay the Chapter 13 trustee, at a minimum, a sufficient amount each month to cure past defaults, plus the trustee's 10 percent fee. In order to make good, many debtors, like Mr. and Mrs. Roberts, propose budgets which commit them to a life of grim austerity, devoid of recreation. Every additional dollar which must be paid under the plan is a dollar taken out of the necessities of life—the allowances for food and clothing—made in these minimal budgets. There probably is no group of debtors more worthy of the protection of the bankruptcy court than these small homeowners caught in an intolerable financial squeeze which threatens the center of their existence—their homes.

Very substantial costs accompany use of Chapter 13. Reference has already been made to the 10 percent commission which the Chapter 13 trustee receives for his services. In addition, it is now established that the secured creditor is entitled to the discounted value of the deferred payments, which means that interest must be paid on the secured creditor's claim. *In re Hibbert*, 14 B.R. 891, 894, 5 C.B.C.2d 474, 477 (Bkrtcy.E.D.N.Y.1981); *In re Busman*, 5 B.R. 332, 337–38, 6 B.C.D. 683, 686 (Bkrtcy. E.D.N.Y.1980); *In re Smith*, 4 B.R. 12, 13, 6 B.C.D. 424, 425–26, 2 C.B.C.2d 77, 79 (Bkrtcy.E.D.N.Y.1980); *see also* 5 *Collier on Bankruptcy* ¶ 1325.01[2], at 1325–26 (15th ed. 1979).

Increasingly, secured creditors are also claiming the right to be reimbursed for their litigation expenses, both pre- and post-Chapter 13 filings. The amount of money involved is relatively large. For example, in this case, in which the foreclosure proceeding never progressed beyond the point of service, and the differences as to the debtors' Chapter 13 plan were resolved by agreement, the secured creditor is, nevertheless, asking $1,223 as attorneys' fees, when the entire amount owed the creditor when the plan was filed was only $2,307.27.

These requests fly squarely into the teeth of the American rule. Broadly speaking, the American rule is that, absent some statute or contract calling for a contrary result, each party in a litigation bears the cost of its own attorneys. *Alyeska Pipeline Service Co. v. Wilderness Society*, 421 U.S. 240, 247, 95 S.Ct. 1612, 1616, 44 L.Ed.2d 141 (1975). New York is in agreement. *Mighty Midgets, Inc. v. Centennial Ins. Co.*, 47 N.Y.2d 12, 21–22, 416 N.Y.S.2d 559, 564, 389 N.E.2d 1080 (1979); *City of Buffalo v. J. W. Clement Co., Inc.*, 28 N.Y.2d 241, 262–63, 321 N.Y.S.2d 345, 364, 269 N.E.2d 895 (1971). Creditors have been consistently denied attorney's fees in bankruptcy proceedings pursuant to the American rule absent exceptional circumstances. *E.g., In re Miller*, 14 B.R. 443 (Bkrtcy.E.D.N.Y.1981); *In re Peerless Mfg. Co.*, 523 F.2d 110 (7th Cir. 1975); *In re Silverman*, 13 B.R. 270, 24 C.B.C.2d 471 (Bkrtcy.S.D.N.Y.1981). *Cf. In re EDC Holding Co.*, 676 F.2d 945 (7th Cir., 1982) ("no allowance will be made to a creditor's attorney for proving his client's claim"). "Attorneys' fees are not considered as part of the 'costs' of litigation; attorneys are paid by their clients—win or lose. It is only where the payment of attorney's fees to the attorney for the adverse party is provided for by contract or statute that they may be recovered." *In re Joslyn*, 224 F.2d 223, 225 (7th Cir. 1955).

What authority or reason is there in this case for departing from the American rule? This Court can find none.

11 U.S.C. § 506(b) allows attorney's fees to a secured creditor only to the extent that they are "provided [for] under the agreement under which such claim arose." Where the bankruptcy courts have concluded that a mortgage provides for the recovery of attorney's fees, they have been allowed. *Roslyn Savings Bank v. Douglas (In re Douglas)*, Bankr. No. 180–06968–16; Adversary No. 180–2005–16 (unreported decision, Price, B. J., E.D.N.Y., 6/10/81); *In re Gregory*, 8 B.R. 256, 7 B.C.D. 230 (Bkrtcy.E. D.N.Y.1981). *See also In re Continental Vending Machine Corp.*, 543 F.2d 986, 994 (2d Cir. 1976); *In re United Merchants & Manufacturers, Inc.*, 674 F.2d 134 (2d Cir. 1982). But such clauses are to be strictly construed. *Toboroff v. The Roslyn Savings Bank (In re Vaniman International, Inc.)*,

Bankr. No. 180–03984–21; Adversary No. 181–0385–21 (Bkrtcy.E.D.N.Y., 5/3/82); *In re KDI Corp.*, 2 B.R. 503, 516–17 (Bkrtcy. S.D.Ohio 1980).

In analogous circumstances, the New York courts have held that the services rendered must come strictly within the terms of the contract. *Engelsberg v. Cinderella Homes, Inc.*, 20 Misc.2d 1027, 192 N.Y.S.2d 317 (Sup.Ct. Queens Co. 1959); *City of Utica v. Gold Medal Packing Corp.*, 54 Misc.2d 721, 283 N.Y.S.2d 603 (Sup.Ct. Oneida Co. 1967), *mod. in other respects*, 31 A.D.2d 730, 297 N.Y.S.2d 166 (4th Dep't 1968).

 In the Roberts' mortgage, the only paragraph dealing with attorneys' fees is Paragraph 17 which provides that "upon any default of the mortgagor" in complying with, or performing, any of the terms of the mortgage or the bond secured thereby, the "mortgagee may at its option remedy such default" and "all payments made by the mortgagee to remedy a default by the mortgagor as aforesaid (including reasonable attorney's fees)" and any payments due from the mortgagor, together with interest thereon, shall be added to the debt secured by the mortgage and shall be paid to the mortgagee upon demand. Since Paragraph 17 is part of a printed form, presented by the mortgagee to the mortgagor for signature, it is well-settled that its terms are to be most strongly construed against the mortgagee. *Restatement of Contracts (2d)* § 206, at 105 (1979); 3 *Corbin on Contracts* § 559 (1960); 4 *Williston on Contracts* § 621 (3d ed. 1961). It makes no difference that the form may not itself have been prepared by the mortgagee. *Semmes Motors, Inc. v. Ford Motor Co.*, 429 F.2d 1197, 1207 (2d Cir. 1970). *See also Kalning v. E. W. Howell Constr. Co.*, 106 Misc.2d 967, 971, 436 N.Y.S.2d 830, 833 (Sup.Ct. Queens Co. 1981). A proceeding to foreclose a mortgage does not "remedy" a default under the mortgage. Even less does the participation by the mortgagor in proceedings under Chapter 13 constitute action by the mortgagee to "remedy" a default by the mortgagor. The purpose of Paragraph 17 appears to be to ensure reimbursement of any outlays for taxes, water rates, or any obliga-

tions payable by the mortgagee under the mortgage, rather than to recover attorneys' fees in foreclosure or bankruptcy proceedings. Indeed, this is the construction which New York has placed upon this language:

"An action to foreclose a mortgage is not one 'to remedy default by the mortgagor' under [a contract]. Such an action is directed at the satisfaction of the mortgage debt and in design is broader than the obtaining of compensation for the mortgagee for its payment of sums which the mortgagor should have paid under the mortgage." *Jamaica Savings Bank v. Cohan*, 38 A.D.2d 841, 841, 330 N.Y.S.2d 119, 120–21 (2d Dep't 1972).

Significantly, even the attorneys for Ninth Federal have not argued that Paragraph 17 covers attorneys' fees and expenses in either the foreclosure, or Chapter 13, proceedings.

 The sole reason advanced by Ninth Federal for departing in this case from the American rule is that legal fees would allegedly have been recoverable from the Federal Housing Authority ("FHA") had the foreclosure proceeding gone forward to conclusion, since its mortgage was insured by FHA. What FHA, having at its disposal the Government's unlimited resources, elects or undertakes to do does not alter or expand the contractual obligations of the Roberts. The Court recognizes that in *In re Hibbert, supra,* a different conclusion was reached in apparent reliance on the prohibition in 11 U.S.C. § 1322(b)(2) against modification of the rights of a mortgagee holding a mortgage on the debtor's principal residence. But to this Court, it appears to stretch the statutory language to read "the rights of holders of secured claims" as embracing whatever fringe benefits an FHA guarantee may yield a mortgagee. Moreover, the *Hibbert* case is distinguishable from the present one.

Just as there are no grounds for deviating from the American rule, there are good reasons for adhering to it in this case.

 Whatever disbursements were incurred, or services performed, on behalf of Ninth Federal in initiating the foreclosure proceeding were incurred, or performed, in

violation of the automatic stay imposed by 11 U.S.C. § 362. As soon as the petition was filed, Ninth Federal was stayed from doing anything whatsoever to enforce its mortgage. It is regrettable that notice of the stay was not received by Ninth Federal until after the foreclosure proceedings had begun. But these hard-pressed debtors should not be compelled to pay for proceedings which should never have been started. Thus, even if Ninth Federal's contract covered foreclosure proceedings, its attorneys' fees would not be allowed because performed in violation of the automatic stay.

With respect to the services in the bankruptcy court performed on behalf of Ninth Federal, both in opposing confirmation of the plan, and in defending Ninth Federal's claim, there is equally no reason for not applying the American rule, or for burdening these already straitened debtors with the cost of these services. From the time this Chapter 13 plan was filed, the debtors made clear their intention to pay whatever arrearages were due, and the differences between Ninth Federal and the debtors related in large part to the amount of the arrearages as to which there was a genuine dispute, just as there is as to the right of Ninth Federal to attorneys' fees. Why should the debtors pay Ninth Federal for the privilege of litigating these issues, particularly in view of the fact that as to the arrearages, Ninth Federal conceded that less was due than it claimed, and the issue as to attorneys' fees is one which the Court is now resolving in favor of the debtors. Since the debtors were the prevailing party with respect to some of the issues, it is, therefore, most appropriate that each side bear its own costs.

Not only do there appear to be no grounds for departing from the American rule in this Chapter 13 proceeding, but to do so would appear to be contrary to the beneficent purposes intended to be served by the bankruptcy laws. *Local Loan Co. v. Hunt,* 292 U.S. 234, 244–45, 54 S.Ct. 695, 699, 78 L.Ed. 1230 (1934). Reference has already been made to the onerous regimen to which the debtors are subjecting themselves and their family to save their home. To them, the sum being sought by Ninth Federal means months of deprivation. The fees Ninth Federal is requesting would require the debtors to maintain their plan for eight months after it would otherwise terminate.[3] To so increase the Roberts' burden of debt without any statutory or contractual basis appears to this Court to be totally inconsistent with the spirit and letter of the Bankruptcy Code.

For the foregoing reasons, this Court is reducing the claim of Ninth Federal insofar as it includes any figure for attorney's fees and disbursements in connection either with the foreclosure proceeding brought subsequent to the filing of the petition, or in connection with representation of Ninth Federal in the proceedings under Title 11.

The debtors are authorized to amend their plan reducing the amount to be paid Ninth Federal in accordance with this Opinion.

Settle order on notice.

---

**3.** In order to pay Ninth Federal $1,223, the debtors would have to turn over $1,414.50 to the Chapter 13 trustee ($1,223 + the Chapter 13 trustee's fee of 10%) which, under a plan calling for payments of $170 a month, would total nearly eight months.