**In re Ina CAMPBELL, Debtor.**

**Bankruptcy No. 891–81763–20.**

United States Bankruptcy Court,
E.D. New York,
at Westbury.

March 23, 1992.

Julie A. Pichardo, Great Neck, N.Y., for debtor.

Philip Irwin Aaron, P.C., Syosset, N.Y., for Banc Plus Mortg. Corp.

Marianne de Rosa, Mineola, N.Y., trustee.

## MEMORANDUM AND ORDER

ROBERT J. HALL, Bankruptcy Judge.

The Chapter 13 Debtor, Ina Campbell (the Debtor), has moved by her attorney, Julie A. Pichardo, Esq. (Pichardo), for an order determining the reasonableness of the attorney fees and expense portion of the proof of claim filed by Philip I. Aaron, Esq. (Aaron), on behalf of a mortgagee, Banc Plus Mortgage Corporation (Banc Plus). After receiving Aaron's affirmation in opposition dated December 4, 1991, and after searching the foreclosure records of the County Clerk of Nassau County, Pichardo amended her request for relief to include a request that the attorney fees and expense portion of the claim be denied in its entirety and that Federal Rules of Bankruptcy Procedure § 9011 sanctions be imposed on Aaron on the grounds that Aaron's claim and affirmation are fraudulent in that they misrepresent to the Court the expenses and legal fees incurred in connection with the foreclosure action and in fact constitute perjury. Pichardo also requests that Aaron be sanctioned for violation of the automatic stay imposed by section 362 of the United States Bankruptcy Code. After receiving Aaron's February 4th affidavit, Pichardo enlarged her request to have the claim disallowed in its entirety.

## THE PETITION

On April 26, 1991, the Debtor, a 58 year old grandmother, who earned $23,000.00 in 1991 working as a nursing aide for Woodmere Nursing Home, 130 Irving Place, New York, New York, filed a Chapter 13 Petition. The Debtor also receives social services payments to take care of her 3 grandchildren ages 12 years, 3 years and 18 months. She does not own a car and does not have a telephone.

The Debtor does own a one family home at 38 Whitehouse Avenue, Roosevelt, Long Island, New York. Mrs. Campbell lists 3 creditors, each secured by liens on her property.

| | | |
|---|---|---|
| BANC PLUS (First Mortgage) | 8 months in arrears $580.00 per month | $ 5,168.00 |
| DELTA FUNDING CORP. (Second Mortgage) | 3 months in arrears $467.03 per month | 1,401.09 |
| BANK OF COMMERCE (Judgment Creditor) | Judgment | 608.77 |
| | TOTAL DEBTS as Scheduled by Debtor | $ 7,177.85 |

## THE PLAN

The Debtor's plan provides for the payment of $241.23 to the Chapter 13 trustee for 36 months ($241.23 × 36 = $8684.28), which would pay all creditors 100% of the amounts scheduled by the Debtor and would also satisfy the commissions earned by the trustee.

## THE PROOF OF CLAIM

Banc Plus filed a proof of claim dated July 11, 1991. Said claim was signed on behalf of the bank by Aaron, and filed on July 15, 1991.

The claim asserts that the following were the sums necessary in order to reinstate the Banc Plus mortgage as of the filing date of the Chapter 13 petition:

| | |
|---|---|
| Arrears through 4/1/90 7 Payments @$580.00 = | $ 4,060.00 |
| Accumulated late charges | 181.02 |
| Legal Fees and Expenses | 3,278.75 |
| Property Inspection | 21.45 |
| TOTAL | $ 9,664.77[1] |
| Interest at 12% for 36 months life of the Plan | 1,891.43 |
| | $11,556.20[2] |

---

*AFFIRMATION OF PHILIP IRWIN AARON DATED DECEMBER 4, 1991*

In response to the Debtor's motion asking the Court to determine the reasonableness of the legal fees and expenses, Aaron made the following affirmed statements:

"3. The following constitutes a breakdown of the *expenses and legal fees incurred* in connection with this matter.

### Expenses

| | |
|---|---|
| Certification of necessary parties (foreclosure report) | $500.00 |
| Service of process | $260.75 |
| Foreclosure filing fee | $198.00 |
| Request for Judicial Intervention filing fee | $ 75.00 |
| Cancellation of Notice of Pendency | $350.00 |
| Additional fees including mailing, microfilming, etc. | $170.00 |
| Court and calendar service | $ 75.00 |
| Referee's fee to compute | $ 50.00 |
| Total Expenses | $1,678.75 |

### Legal Services Rendered

| Services | Attorney | Time |
|---|---|---|
| Receipt and review of file from client including correspondence, promissory note, mortgage, and mortgage policy; correspondence to abstract company to order foreclosure report; discussed file with client. | Philip Aaron | 2.00 |
| Receipt and review of foreclosure report, preparation, review, and revision of summons and verified complaint and notice of pendency; correspondence to process server; correspondence to abstract company to file summons and complaint and notice of pendency. | Paul Rudden | 2.50 |
| Correspondence to Nassau County Clerk to file affidavits of service. | Paul Rudden | .25 |
| Preparation and review of affidavit in support of referee to compute. | Paul Rudden | .50 |
| Review of loan documents, loan history, and all State Court documents in connection with the foreclosure action; preparation, review and filing of proof of claim, correspondence to Court Clerk. | Craig Heller | 1.25 |
| Review of file and preparation, review and service of Notice of Motion to Vacate Automatic Stay and Deny Confirmation. | Craig Heller | 1.00 |
| Review and service of Affirmation on Non-Payment | Jeffrey Spinner | .50 |

1. The claim contains an error in addition in the amount of $2,123.55 in favor of Banc Plus. The total should be $7,541.22.

2. Due to the $2,123.55 error in addition, this amount should be $9,432.65.

<u>Legal Services Rendered</u>

| Services | Attorney | Time |
|---|---|---|
| Two (2) Court appearances on the Notice of Motion. | Jeffrey Spinner | 1.00 |
| | Craig Heller | 1.00 |

Total Time . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12.00 Hours

**TOTAL LEGAL SERVICES AND EXPENSES** . . . . . . . . . . . . . . . . . . . . . . **$4,247.50**

Regular Billing Rates:

| | |
|---|---|
| Philip Irwin Aaron, Esq. | $250.00 per hour |
| Paul Rudden, Esq. | $175.00 per hour |
| Craig S. Heller, Esq. | $150.00 per hour |
| Jeffrey Arlen Spinner, Esq. | $150.00 per hour |

4. As can be seen from the foregoing, the expenses of the foreclosure action constitute a substantial portion of the claim.

5. It is respectfully submitted that the legal fees incurred in connection with the foreclosure action are reasonable in light of the services rendered and the time expended. The expenses of the actions speak for themselves.

6. By reason of the foregoing, the debtor's objection to the claim of BANCPLUS in connection with the legal fees and expenses should be denied.

WHEREFORE, your affirmant respectfully requests that the debtor's objection to the proof of claim filed on behalf of BANCPLUS be denied in its entirety; that the proof of claim be permitted to stand as filed; and that BANCPLUS be awarded costs in connection with this Motion, together with such other, further and different relief as this Court may deem just, proper and equitable.

Dated: Syosset, New York
December 4, 1991 s/

Philip Irwin Aaron (PIA2583)
Philip Irwin Aaron, P.C.
Attorney for BANCPLUS MORTGAGE
  CORPORATION
115 Eileen Way
Syosset, New York 11791
(516) 364-4500"

(Emphasis added).

---

### THE SUR–REPLY OF JULIE A. PICHARDO DATED SEPTEMBER 17, 1991

Pichardo's Sur–Reply annexed a copy of a letter from Aaron's office dated September 17, 1991 to the County Clerk's Office, enclosing 4 (sic) affidavits of service for filing. The other exhibit was a photostat copy of the County Clerk's record of the foreclosure. Said record showed the following:

1—There was never a Request for Judicial Intervention.

2—There was never a motion to request a cancellation of the Notice of Pendency.

3—No referee had been requested or appointed.

### THE AFFIDAVIT OF PHILIP IRWIN AARON DATED FEBRUARY 4, 1992

In this Affidavit, in an attempt to explain the discrepancies created by his affirmation of December 4, 1991, Mr. Aaron now swears that

1—the $75.00 fee for request for intervention was not a fee that had been paid, but may be paid in the future;

2—the $350.00 for cancellation of the Notice of Pendency was not a court filing expense or fee incurred, but a prospective legal fee that may be earned in the future;

3—the expense of $75.00 for calendar answering service was not incurred, nor paid;

4—the expense of $50.00 for the referee's fee to compute was not incurred, nor paid;

5—the expense of $170.00 is an average overhead item. There is no claim that any expenses were incurred or why they are not included in the legal fee as overhead.

Some bills are attached as exhibits. Only one cancelled check was attached.

## HEARING

After several delays at the request of Aaron, a hearing on the Debtor's motion objecting to the Banc Plus claim was held on February 7, 1992.

At the commencement of the hearing, the Court ruled that based on all of the papers submitted, the Debtor had overcome the presumption of validity of the claim and had established a prima facie case that the claim as to legal fees and expenses was not valid. Accordingly, the burden of coming forth with evidence, and the burden of establishing the validity of the claims were on the creditor. Federal Rules of Bankruptcy Procedure § 3001(f).

Aaron did not personally appear at the hearing. Aaron did not testify at the hearing. No one from Aaron's office testified at the hearing. Attorney Jules A. Epstein (Epstein) argued on behalf of the Claimant and Aaron, and attorney Pichardo argued on behalf of the motion. In his argument, Epstein alleged that an associate, Craig Heller, prepared the figures and that Epstein did not know if Aaron had independently reviewed what Mr. Heller allegedly compiled. There is no evidence to support this argument. Aaron signed the proof of claim and swore under the penalty of perjury in an affidavit and an affirmation. There is no evidence that anyone else is responsible for or involved in the preparation of these documents.

## DISCUSSION

Although thousands of Chapter 13 cases have been handled by this Court since the enactment of the United States Bankruptcy Code on October 1, 1979, the filing of an objection to a mortgagee's claim as to legal fees and expenses is rarely done. This may be the first which I have been asked to consider.

The response of the creditor and its attorney in this case, have caused me grave concern. The question which occurs to me, is this case an aberration, or a reflection of the routine conduct of the attorney. The question cannot be answered within the confines of this motion.

The Debtor's plan provides for a total payment of $8,684.28 over 36 months. The claim filed by Aaron is in the amount of $11,556.20. Clearly, if this claim was valid, the budget and the plan are deficient, the plan could not be confirmed, and the Debtor would lose her home.

An examination of the breakdown of the legal fees and expenses will be done on an item by item basis.

<u>Expense</u>

| | | | |
|---|---|---|---|
| 1. | CERTIFICATION OF NECESSARY PARTIES (FORECLOSURE REPORT) | | $500.00 |
| | Aaron has produced a bill for | | $450.00 |
| | (Obvious overcharge | | $ 50.00) |
| 2. | SERVICE OF PROCESS | | $260.75 |
| | Aaron has produced bills from the process server— | | |
| | Debtor Ina Campbell | $ 25.00 | 3/22/91 |
| | Delta Funding Corp. | $ 15.00 | 3/22/91 |
| | Willy Davis | $ 16.00 | 4/13/91 |
| | Bank of Commerce | $ 20.00 | |
| | | $ 76.00 | |

Expense

Investigation to locate
Willy Davis $200.00[3]

$276.00

3. FORECLOSURE FILING FEE $198.00

Aaron has produced a cancelled check dated 3/14/90 to the title company

4. REQUEST FOR JUDICIAL INTERVENTION FILING FEE $ 75.00[4]

Aaron admits this is not an "expense incurred" as alleged in his affirmation of December 4, 1991 Aaron describes it as a prospective fee to be paid in the future. Although the fee has not been paid, or may never be paid, Aaron is asking that he be paid 12% a year on $75.00 for the 36 month life of the plan.

5. CANCELLATION OF NOTICE OF PENDENCY $350.00[5]

Aaron admits that this is not an "expense incurred" as affirmed but a prospective legal fee for work that may be done in the future. Aaron is asking that he be paid 12% interest a year for three years on the $350.00 which he has not earned.

6. ADDITIONAL FEES INCLUDING MAILING, MICROFILMING, ETC. $170.00

Aaron alleges that this is what he charges his clients. There is no evidence that any of these expenses were incurred or any reason for the Debtor to pay this sum.

7. COURT AND CALENDARING SERVICE $ 75.00

Aaron now concedes that his affirmation that the $75 fee was an "expense incurred" for Court and Calendaring Service was untrue.

8. REFEREE'S FEE TO COMPUTE $ 50.00

Aaron now concedes that his affirmation which affirmed that $50 was paid to a referee to compute was untrue.

---

The claim filed by Aaron contains a mathematical error which increased the claim for legal fees by $2,123.55. Aaron has not brought this to the Court's attention although this motion has been pending since October 11, 1991.

### LEGAL SERVICES RENDERED

The legal services set forth in Aaron's Affirmation of December 4, 1991, do not show the dates on which the alleged legal services were performed. However, a careful reading would show that the Debtor is being charged $67.50 for the preparation and review of Affidavit in Support of Referee to Compute (Rudden). Service of the last defendant was on April 13, 1991. The bankruptcy petition was filed on April 26, 1991. At that stage of the foreclosure, before the filing of the bankruptcy petition, there would be no reason to prepare such an affidavit.

This charge for legal services is baseless and fraudulent.

The Debtor is being charged for an attorney to prepare and send a covering letter filing 3 affidavits of service with the County Clerk, four months after the petition was filed, and two months after the claim was filed with the Court. The record of

---

3. No explanation is given to verify the need or the reasonableness of the $200 investigation fee. No proof of payment is submitted.

4. Because the proof of claim does not disclose that the $75.00 charge would be the filing fee *if* Aaron is requested by the Debtor at the completion of the plan to cancel the Notice of Pendency, there is no assurance that three years from now, Aaron would not bill the Debtor again for the same filing fee.

5. Since the proof of claim does not inform the Debtor or her attorney that she is being charged the $350.00 in order to cancel the Notice of Pendency, what assurance do we have that Aaron will not bill the Debtor again, if he is requested to cancel the Notice of Pendency three years from now, when the plan is completed.

the County Clerk shows a letter from the creditor dated September 17, 1991 enclosing affidavit of service for four defendants:

Ina Campbell
Willy Davis
Delta Funding Corp.
Bank of Commerce

The affidavit of service on Willy Davis had been previously filed with the County Clerk on April 24, 1991 and was not included with Mr. Rudden's letter. Attached to the affidavits was a copy of the Summons dated September 17, 1991. The actual Summons is dated March 13, 1991.

Therefore, the Debtor is being charged legal fees to have an attorney prepare a simple covering letter which is (1) botched, (2) prepared after the claim was filed, and (3) in violation of the automatic stay.

The Court is being told that the claim filed on July 15, 1991 included 3½ hours of legal work for a motion in the Bankruptcy Court made after the claim was filed. This may have been done in order to hide the mathematical "error" of $2,123.55 in favor of the creditor and its attorney.

The claim for expenses never incurred and for legal work not performed, support the conclusion that the claim for legal services and expenses is for the most part fraudulent.

## CREDITOR'S RIGHT TO LEGAL FEES

After determining that the claimant has filed a fraudulent claim in that much of the legal work could not be the basis of a prepetition claim, and that the expenses were fraudulent in some cases and that the creditor failed in its proof in others, the Court will now deal with the question as to whether or not the creditor has the right to seek any legal fees at all in this case.

The claimant was asked by the Court to submit a Memorandum of Law on whether it was in fact entitled to any legal fees or expenses under the provisions of the mortgage.

The provision in question is paragraph 17 of the mortgage, which states:

17. That upon any default by the Mortgagor in the compliance with, or performance of, any of the terms, covenants, or conditions of this mortgage or of the bond secured hereby, the Mortgagee may at its option remedy such default; and that all payments made by the Mortgagee to remedy a default by the Mortgagor as aforesaid (including reasonable attorneys' fees) and the total of any payment or payments due from the Mortgagor to the Mortgagee and in default, together with interest thereon at the rate set forth in the bond secured hereby shall be added to the debt secured by this mortgage and shall be repaid to the Mortgagee upon demand. Any such sum and the interest thereon shall be a lien on the premises, prior to any other lien attaching or accruing subsequent to the lien of this mortgage.

Claimant notes that in *Jamaica Savings Bank v. Cohan*, 38 A.D.2d 841, 330 N.Y.S.2d 119 (1972), the Appellate Division Second Department ruled that on a clause with identical language, there is no right for the recovery of attorneys' fees in a foreclosure.

Claimant also notes that Bankruptcy Judge Cecelia A. Goetz, United States Bankruptcy Court, Eastern District of New York *rejected* the argument that since the mortgage in question was insured by the FHA, the creditors could have recovered its attorneys' fees from the FHA and were, therefore, entitled to attorneys' fees. *In re Roberts*, 20 B.R. 914 (Bankr.E.D.N.Y.1982).

Judge Goetz's decision discusses in detail the requirements to establish the right of creditors to be awarded attorneys' fees in a foreclosure action. Claimant declines to follow Judge Goetz's decision and would like to rely on *In re Hibbert*, 14 B.R. 891 (E.D.N.Y.1981). *Hibbert* does not help the claimant. In that case the creditor was objecting to a plan which did not award legal fees and expenses in a foreclosure action, but where the debtor's attorney *conceded* that legal fees in the foreclosure action, the foreclosure disbursement and legal fee to represent the creditor in the Chapter 13 proceeding were appropriate.

Since in *In re Hibbert* the debtor conceded that the creditor was entitled to legal

fees, the Court was only required to determine whether the creditor was entitled to the fee for discharging the lis pendens and the inspection fees. Whether the determination in that case was correct or not, the debtor was made aware that he was paying for services to be rendered. In reading the claim or Aaron's affirmation of December 4, 1991, this would not be made clear to anyone.

Therefore, the *Hibbert* case cannot be relied upon as a basis for finding that an FHA insured loan gives the claimant the right to counsel fees where the mortgage documents do not.

The real issue in the *Hibbert* case was a dispute over how to compute the interest factor on the deferred payments over the life of the plan. It should be noted that in the 1981 *Hibbert* case, the interest factor was fixed at 12%, and in the 1982 *Roberts* case the interest factor was agreed at 12.-5%. These rates were fixed when interest rates were very high and if the Court was asked to fix the rate today, it would be considerably lower to reflect current conditions.

■ *In re Roberts* is determinative of the issue. The language in the mortgage can not be the basis for awarding legal fees and expenses. Creditor's claim for legal fees is without factual or legal basis.

It should be noted that the Creditor sought legal fees under the same provision in the state foreclosure action.

Since the Creditor is not entitled to legal fees and expenses totalling $3,278.75, and deducting the "mathematical error" of $2,123.55 from the claim, the total arrearages are reduced from $9,664.77 to the amount of $4,262.47. The interest rate to be applied is nine and one half percent (9½).

■ Both the proof of claim f iled by Aaron and his December 4, 1991 affirmation are grossly fraudulent. If unchecked, Aaron stood to receive an additional $5,402.30 plus interest from the Debtor based on the fraudulent claim. If Aaron's claim went unchallenged, the Debtor may have lost her house and Aaron's client, Banc Plus, would have lost its opportunity to have the mortgage reinstated.

Aaron's effort to file a false proof of claim could only benefit him and is in conflict with the interest of his client, Banc Plus, whose opportunity to have the mortgage reinstated is a valuable right which would have been lost if the gross inflation and padding of the claim was not disclosed by Pichardo's efforts.

Aaron has signed and filed with the Court a false claim and signed and filed with the Court a false affirmation in support of said claim. The Court finds that Aaron has acted in bad faith and sanctions him under the Court's inherent power to deal with improper conduct. The Court also finds that it is mandated to sanction Aaron under Rule 9011 of the Federal Rules of Bankruptcy Procedure. Aaron's fraudulent proof of claim and false affirmation are certainly in violation of a Rule which requires an attorney to certify that his papers have a genuine basis in fact and in law.

Inasmuch as a proof of claim is the most basic document filed in a bankruptcy court and because an attorney's affirmation must have the highest degree of reliability, Aaron's outrageously fraudulent claim and affirmation demand that the Court sanction him in the following amounts:

Aaron shall pay to Julie A. Pichardo, the attorney for the Debtor, $5,000.00 for reasonable attorney's fees in representing the debtor in this motion.

Aaron shall pay to the Debtor, Ina Campbell, the intended victim of Aaron's outrageous greed, the sum of $15,000.00.

Aaron is directed to make said payments within 10 days of the date of this Order.

Under Rule 9011 of the Federal Rules of Bankruptcy Procedure, the client, Banc Plus, could be subject to sanctions; however, Banc Plus could only be harmed by Aaron's conduct and sanctions on Banc Plus would be unreasonable and unfair.

SO ORDERED.