**In re Billy Joe SIMS, Debtor.**

**In re Louis Salamina and Nancy Salamina, Debtors.**

**In re Johnny Kern and Vickie Louise Kern, Debtors.**

**In re Debra Lynn Klimczak, Debtor.**

**Gwendolyn M. Kerney, chapter 13 trustee, in her official capacity as trustee in chapter 13 proceedings and on behalf of those similarly situated; Billy Joe Sims; Louis and Nancy Salamina; Johnny and Vickie Louise Kern; and Debra Lynn Klimczak, as debtors in chapter 13 proceedings on their own behalf and on behalf of a class of similarly situated debtors, Plaintiffs,**

**v.**

**Capital One Financial Corporation, Defendant.**

**Bankruptcy Nos. 00–20967, 97–21272, 99–22276, 00–21323.
Adversary No. 00–2048.**

United States Bankruptcy Court, E.D. Tennessee.

May 8, 2002.

Richard L. Banks, Richard L. Banks & Associates, Cleveland, TN, Timothy E. Eble, Timothy E. Eble, P.A., Mount Pleasant, SC, S.C. Middlebrooks, Kimberly J. Calametti, Gardner, Middlebrooks, Fleming, Gibbons & Kittrell, Mobile, AL, Sam Heldman, Hilary Ball, Gardner, Middlebrooks, Fleming, Gibbons & Kittrell, Washington, DC, for Plaintiffs.

Melinda Meador, Bass, Berry & Sims PLC, Knoxville, TN, Paul G. Jennings, Beth A. Dunning, Bass, Berry & Sims PLC, Nashville, TN, Adam A. Lewis, Morrison & Foerster LLP, San Francisco, CA, for Defendant.

### *MEMORANDUM*

MARCIA PHILLIPS PARSONS, Bankruptcy Judge.

In this adversary proceeding, the plaintiffs seek individual and class wide relief based on Capital One Financial Corporation's alleged practice of "willfully and systematically filing claims in excess of the amount to which it is entitled in Chapter

13 proceedings." Presently before the court is Capital One's motion to dismiss for failure to state a claim as a matter of law. For the reasons discussed below, the motion will be granted in part and denied in part. This is a core proceeding. *See* 28 U.S.C. § 157(b)(2)(A),(B),(C),(E) and (O).

## I.

This adversary proceeding was commenced on October 24, 2000, by Gwendolyn M. Kerney, the standing chapter 13 trustee, and the debtors in four separate chapter 13 cases pending in this court. According to the amended complaint filed on February 9, 2001, Ms. Kerney "seeks to be named as a plaintiff in her official capacity and as a representative class plaintiff on behalf of similarly situated Trustees" pursuant to Fed.R.Civ.P. 23. Similarly, the individual debtors sue on their own behalf and on behalf of a class of chapter 13 debtors similarly situated.

The plaintiffs allege that Capital One has purposely and intentionally filed claims not only in this court, but in bankruptcy courts nationwide for amounts which "improperly include post-petition interest and/or post-petition over-limit fees in excess of those owed by a debtor to defendant, Capital One, as of the filing date of the petition." According to the plaintiffs, "[o]ther Chapter 13 debtors have objected to such excess charges in claims filed by Capital One in the past and the Court has sustained those objections." Yet Capital One "continues to violate the spirit and the letter of Title 11 of the United States Bankruptcy Code by continuing its unlawful practices." The plaintiffs further contend that "Capital One systematically has waited until near the expiration of bar date before filing its inflated claims, thus maximizing the amounts unlawfully claimed."

Based on these facts, the plaintiffs set forth six claims or causes of action. In the first claim, the plaintiffs allege that Capital One has violated 11 U.S.C. § 502(b)(2) "requiring the calculation of its claim as of the date of each respective filing of the Chapter 13 petitions by the named debtors/plaintiffs." The plaintiffs assert that as such, this court is empowered by 11 U.S.C. § 105 to rectify and enjoin the abusive processes by Capital One.

In their second claim, the plaintiffs seek contempt remedies under § 105 or this court's inherent power for Capital One's willful violation of the instruction in Official Form 10, the proof of claim form, wherein a creditor is directed to "State the Amount of the Claim At Time Case Filed." According to plaintiffs, official forms are judicial orders which must be followed and observed pursuant to Fed. R. Bankr.P. 9009.

The plaintiffs' third claim is that Capital One's actions constitute a willful and knowing violation of the automatic stay, actionable under 11 U.S.C. § 362(h). More specifically, the plaintiffs contend that Capital One violated the automatic stay when it postpetition (1) failed to terminate or end the accrual of interest and other fees on the chapter 13 debtors' accounts upon receiving notice of the commencement of their cases; (2) failed to deduct postpetition interest and fees when the proofs of claim were prepared; and (3) filed proofs of claim which improperly sought amounts owed as of the date the claims were prepared rather than the date the bankruptcy cases were commenced.

In their fourth claim, the plaintiffs contend that pursuant to 11 U.S.C. § 1327, Capital One is bound by the orders confirming the debtors' chapter 13 plans, which specifically provide for payment of a certain percentage dividend on unsecured claims. The plaintiffs allege that these percentage dividends are directly and adversely affected by any excessive claims

and that by filing inflated claims, Capital One is in contempt of the court's confirmation orders.

The plaintiffs' fifth claim is premised on the assertion that Capital One has taken more than its proportionate share of the bankruptcy estates. Accordingly, the plaintiffs contend that Capital One is subject "to the mandatory requirements of 11 U.S.C. § 542 and the turnover to the Chapter 13 Trustee of any distributions wrongfully received."

Lastly, the plaintiffs' sixth claim is based on unfair discriminatory treatment of creditors, material misrepresentation, and abuse of process. The plaintiffs assert that Capital One's actions have resulted in it receiving more than other unsecured creditors under the debtors' plans, despite the fact that there is no separate classification for the treatment of Capital One's claim in these plans, and that this practice constitutes an unfair discriminatory treatment contrary to 11 U.S.C. § 1322(b)(1). Similarly, the plaintiffs contend that Capital One willingly made false material representations to this court in its completion of Official Form 10 which directs a creditor to set forth the total amount of the claim at the time the case was filed. Finally, the plaintiffs maintain that Capital One's "systematic pattern of falsely misrepresenting the net amount of its claims is an egregious abuse of process."

In light of these allegations, "[t]he Chapter 13 Trustee requests a class-wide objection be sustained as to all inflated claims filed by Capital One in any pending Chapter 13[and] that this court use it powers under 11 U.S.C. § 105 to enter such orders as necessary to force Capital One to return any improperly earned dividends to the estates from which they were taken." The named chapter 13 trustee and the trustee class seek an order requiring Capital One to (1) "amend its inflated proofs of claim in

any Chapter 13 proceeding presently pending;" (2) provide an accounting of how the amounts set forth on any filed proof of claim were calculated; and (3) reveal the amounts it wrongfully collected in pending cases. All of the named plaintiffs and classes seek an injunction against Capital One "forbidding it from filing claims which include post-petition interest and/or post-petition late fees and/or post-petition over-limit fees" and mandating Capital One "to change its claim filing procedures to prevent the filing of improper claims in the future." Lastly, the plaintiffs seek compensatory and punitive damages, including attorney fees and costs.

In its motion to dismiss, Capital One states that its alleged wrongful conduct does not violate any provision of the Bankruptcy Code and that neither the Code nor any other applicable law provides a private right of action to remedy the alleged violations. More specifically, Capital One contends that the claims raised by the plaintiffs in the amended complaint should be dismissed for one or more of the following reasons:

(i) there is no private right of action under Sections 502 or 362 of the Bankruptcy Code; (ii) the Plaintiffs lack standing because they have suffered no economic injury; (iii) the Complaint fails to state a claim for contempt of the confirmation orders, Code Section 1327(c) or Official Form 10; (iv) the Complaint fails to state a claim for unlawful taking of property of the estate or for turnover under Code section 542; (v) the alleged conduct of Capital One does not support a claim for abuse of process or unfair discriminatory treatment under Code section 1322(b)(1); (vi) the Trustee lacks authority to bring the trustee class claims; (vii) the Court lacks subject matter jurisdiction over the Class claims; and (viii) the Com-

plaint is procedurally defective as to the Class claims.

Based on the foregoing, Capital One asserts that the plaintiffs' amended complaint fails to state any claim upon which relief can be granted as a matter of law and therefore should be dismissed in its entirety. Capital One has submitted memoranda of law in support of its motion. The plaintiffs, of course, have filed a memorandum in opposition to the motion to dismiss. Each of plaintiffs' bases for relief, along with Capital One's grounds for dismissal, will be addressed in seriatim.

## II.

A. *Failure to Net Claim; 11 U.S.C. §§ 502(b)(2) and 105.*

■ Section 502(b)(2) of the Bankruptcy Code provides that if an objection is made to a claim, the court after notice and hearing shall determine the amount of the claim as of the date of the filing of the petition and shall allow the claim in that amount except to the extent that the claim is for unmatured interest.[1] The plaintiffs assert in the first claim of their amended complaint that Capital One has violated this section by routinely calculating its claims at a date later than the bankruptcy filing, thereby improperly including postpetition interest and/or late fees and/or overlimit fees. The trustee objects to these claims and invokes the court's authority under 11 U.S.C. § 105[2] to rectify and enjoin Capital One's actions.

In its motion to dismiss, Capital One asserts that § 502(b)(2) does not provide an express or implied right of action for damages or injunctive relief for any violation of that provision. Capital One also maintains that § 105 of the Bankruptcy Code does not fill this void because it "does not create any new rights beyond those enumerated in the Code already." In support of these contentions, Capital One cites the Sixth Circuit Court of Appeals' decisions in *Pertuso v. Ford Motor Credit Co.*, 233 F.3d 417, 421 (6th Cir. 2000), and *Kelvin v. Avon Printing Co. (Matter of Kelvin Publ'g, Inc.)*, 1995 WL 734481 (6th Cir. Dec.11, 1995).

In *Pertuso*, the Sixth Circuit considered the issue of whether former chapter 7 debtors could maintain an action for a creditor's alleged violation of 11 U.S.C. § 524(a)(2) and (c) based on the creditor's acceptance of payments under an unenforceable reaffirmation agreement. *Pertuso*, 233 F.3d at 421. Although § 524 provides no express right of action, the debtors in *Pertuso* argued that an implied right of action existed or alternatively, that § 524 is enforceable via 11 U.S.C. § 105. *Id.* The Sixth Circuit rejected both of these arguments.

With respect to the implied action contention, the court stated:

> The court may issue any order, process, or judgment that is necessary or appropriate to carry out the provisions of this title. No provision of this title providing for the raising of an issue by a party in interest shall be construed to preclude the court from, sua sponte, taking any action or making any determination necessary or appropriate to enforce or implement court orders or rules, or to prevent an abuse of process.

1. 11 U.S.C. § 502(b)(2) states:
 Except as provided in subsections (e)(2),(f),(g),(h) and (i) of this section, if such objection to a claim is made, the court, after notice and a hearing, shall determine the amount of such claim as of the date of the filing of the petition, and shall allow such claim in lawful currency of the United States in such amount, except to the extent that ... such claim is for unmatured interest.

2. 11 U.S.C. § 105(a) provides that:

In *Cort v. Ash,* 422 U.S. 66, 95 S.Ct. 2080, 45 L.Ed.2d 26 (1975), the Supreme Court identified four factors that are to be considered in determining whether a private right of action exists for breach of a federal statute. The factors to be considered are these: (1) whether the plaintiff is a member of a class for whose special benefit the statute was enacted; (2) whether there is any explicit or implicit indication of congressional intent to create or deny a private remedy; (3) whether a private remedy would be consistent with the underlying purpose of the legislative scheme; and (4) whether the cause of action is one traditionally relegated to state law. *Id.* at 78, 422 U.S. 66, 95 S.Ct. 2080, 45 L.Ed.2d 26. "The most important inquiry," as the Court subsequently explained in *Touche Ross & Co. v. Redington,* 442 U.S. 560, 575, 99 S.Ct. 2479, 61 L.Ed.2d 82 (1979), "is whether Congress intended to create the private remedy sought by the plaintiffs."

We are not to infer the existence of private rights of action haphazardly. Under *Touche Ross,* the recognition of a private right of action requires affirmative evidence of congressional intent in the language and purpose of the statute or in its legislative history. *See TCG Detroit v. City of Dearborn,* 206 F.3d 618, 623 (6th Cir.2000).

*Pertuso,* 233 F.3d at 421.

Applying this criteria to § 524(a)(2) which provides that a discharge operates as an injunction against actions to recover discharged debts, the *Pertuso* court noted that "the traditional remedy for violation of an injunction lies in contempt proceedings, not in a lawsuit such as [the one before it]." With respect to § 524(c) which sets forth the conditions under which a reaffirmation agreement is enforceable, the court observed that "§ 524(c) does not proscribe any conduct at all; it merely sets forth the conditions under which a reaffirmation agreement is enforceable." *Id.* Accordingly, the court found that the precise language of § 524(a)(2) and (c) did not evidence a legislative intent to provide a private right of action. The court's examination of the statute's legislative history similarly revealed the absence of affirmative support for the plaintiffs' position. *Id.* at 421–22.

The Sixth Circuit also observed that "[w]hat Congress subsequently failed to do with regard to § 524 sheds rather more light on the legislature's intent" than its original enactment of the Bankruptcy Code. *Id.* at 422. The court noted that in 1984 Congress amended 11 U.S.C. § 362 to provide an express right of action for violations of the automatic stay in § 362(h). The court stated that although the 1984 amendments also included changes to § 524 of the Bankruptcy Code as well, no express cause of action was added to § 524. "The contrast, we think, is instructive." *Id.*

As to the debtors' argument that violations of § 524 may be remedied pursuant to § 105, the *Pertuso* court noted that it had rejected a similar argument in *Kelvin* and that its view remained the same. *Id.* (citing *Matter of Kelvin Publ'g, Inc.,* 1995 WL 734481, *4). In *Kelvin,* the bankruptcy court had sanctioned the principals of the debtor for violating 11 U.S.C. § 363, which prohibits a debtor's use of cash collateral absent the creditor's or the court's consent. *Matter of Kelvin Publ'g, Inc.,* 1995 WL 734481, *2. Upon appeal, the Sixth Circuit observed that § 363(c)(2) "does not mention the possibility of a direct cause of action by creditors against the debtor in possession for recovery of cash collateral wrongly spent." *Id.* at *3. In response to the creditor's assertion that the bankruptcy court's actions were autho-

rized by § 105(a), the first sentence of which states that "[t]he court may issue any order, process, or judgment that is necessary or appropriate to carry out the provisions of this title," the Sixth Circuit disagreed. "[W]e do not read § 105 as conferring on courts such broad remedial powers. The 'provisions of this title' simply denote a set of remedies fixed by Congress. A court cannot legislate to add to them." *Id.* at *4.

The Sixth Circuit also considered in *Kelvin* whether § 363 impliedly provided a private right of action. Applying the four factor utilized by the Supreme Court in *Cort v. Ash,* the *Kelvin* court concluded that the plaintiffs in that case were of the class for whom the statute was created, thus satisfying the first factor, but that the other three factors suggested restraint. *Id.* at *5 (citing *Cort,* 422 U.S. at 78, 95 S.Ct. 2080). With respect to the second factor, whether there was any indication of legislative intent to create such a remedy, the Sixth Circuit found none, noting that the legislative history to § 363 simply paraphrased the text's general prohibition. *Id.* Consideration of the third factor indicated that "a cause of action might be implied if the only other choice would be to render the cash collateral rule a nullity." *Id.* The court concluded, however, that the "cash collateral provision of the code works fairly well without a direct cause of action" because if a creditor fears that cash collateral will be improperly spent, the debtor can be ordered not to spend it and thereafter, can be ordered to repay in a contempt proceeding if he violates the rule. *Id.* Lastly, regarding the fourth factor, the *Kelvin* court examined whether the cause of action was one traditionally relegated to state law such that it would be inappropriate to infer a cause of action based solely on federal law. The court determined that while bankruptcy is a area of federal concern which preempts state law, the basic relationship between creditor and debtor was resolved by state law. The Sixth Circuit found no clear statement of congressional intent nor a compelling federal interest which would justify substituting federal law for viable state law in this area. *Id.* at *6.

In their memorandum of law in response to Capital One's motion to dismiss, the plaintiffs as much as concede that *Pertuso* "stand[s] in the way of relief in this case." The plaintiffs counter, however, that:

> Capital One has reached the wrong answer because it has addressed the wrong question. The crucial question is not whether Section 502 creates a private right of action. The crucial question instead is whether this Court has the authority, under Section 105 of the Code (as well as, for instance, 28 U.S.C. § 2201 [3]) to put a stop to Capital One's unlawful practice, which violates Section 502.

---

**3.** 28 U.S.C. § 2201 provides:

(a) In a case of actual controversy within its jurisdiction, except with respect to Federal taxes other than actions brought under section 7428 of the Internal Revenue Code of 1986, a proceeding under section 505 or 1146 of title 11, or in any civil action involving an antidumping or countervailing duty proceeding regarding a class or kind of merchandise of a free trade area country (as defined in section 516A(f)(10) of the Tariff Act of 1930), as determined by the administering authority, any court of the United States, upon the filing of an appropriate pleading, may declare the rights and other legal relations of any interested party seeking such declaration, whether or not further relief is or could be sought. Any such declaration shall have the force and effect of a final judgment or decree and shall be reviewable as such.

(b) For limitations on actions brought with respect to drug patents see section 505 or 512 of the Federal Food, Drug, and Cosmetic Act.

466

In support of this proposition, the plaintiffs cite *Tate v. NationsBanc Mortgage Corp. (In re Tate)*, 253 B.R. 653 (Bankr. W.D.N.C.2000), wherein the court specifically held that it had the equitable authority under § 105 to remedy actions taken by a creditor in violation of § 502.

 In certain respects, this court both agrees and disagrees with the parties on this issue. To the extent the plaintiffs assert a direct cause of action for violation of § 502(b)(2), the claim may not stand, based on the directives of the Sixth Circuit in *Pertuso* and *Kelvin* as Capital One contends. Other than in the context of an objection to a claim, § 502(b)(2) provides no express private right of action. And, application of the four *Cort* factors indicates that there is no implied right of action under § 502(b)(2). Granted, the first factor, whether the plaintiffs are members of the class for whose special benefit the statute was enacted, is in the plaintiffs' favor. The prohibition on claiming unmatured interest is "a rule of administrative convenience and fairness to all creditors," designed "to calculate the amount of claims easily and assure that creditors at the bottom rungs of the priority ladder are not prejudiced by the delays inherent in liquidation and distribution of the estate." *Hanna v. United States (In re Hanna)*, 872 F.2d 829, 830 (8th Cir. 1989). As the party vested with the responsibility of paying the claims in the chapter 13 process and acting on behalf of creditors, clearly the chapter 13 trustee falls within the category of those § 502(b)(2) was enacted to benefit.

On the other hand, the court finds no indication in the legislative history to § 502 that Congress intended to create a direct cause of action, a factor which the Supreme Court has characterized as "[t]he most important inquiry." *Pertuso*, 233

F.3d at 421 (quoting *Touche Ross & Co. v. Redington*, 442 U.S. 560, 575, 99 S.Ct. 2479, 61 L.Ed.2d 82 (1979)). *See also Matter of Kelvin Publ'g, Inc.*, 1995 WL 734481, *5 ("[T]he Supreme Court has consistently stressed the importance of actual evidence of legislative intent."). Similarly, the third factor suggests the absence of an implied private right of action since a remedy, disallowance of the claim to the extent of the unmatured interest, is set forth in the statute. *Board of Trustees v. City of Painesville*, 200 F.3d 396 (6th Cir.1999) (quoting *Middlesex County Sewerage Auth. v. National Sea Clammers Ass'n*, 453 U.S. 1, 14–15, 101 S.Ct. 2615, 69 L.Ed.2d 435 (1981) ("[I]t is an elemental canon of statutory construction that where a statute expressly provides a particular remedy or remedies, a court must be chary of reading others into it.")).

Furthermore, *Pertuso's* construction of § 105 precludes any utilization of the statute to create a cause of action in favor of plaintiffs for violation of § 502(b)(2). This court recognizes that other courts, including the First Circuit Court of Appeals in *Bessette* and the *Tate* decision cited by plaintiffs, have invoked § 105 to remedy violations of the Bankruptcy Code and the Federal Rules of Bankruptcy Procedure. *See Bessette v. Avco Fin. Servs., Inc.*, 230 F.3d 439, 444–45 (1st Cir.2000) (although § 105 does not itself create a private right of action, a court may invoke § 105(a) to enforce the discharge injunction imposed by § 524 and order damages); *In re Tate*, 253 B.R. at 668 (court concluded that it had the power under § 105 to order restitution and actual damages in favor of chapter 13 debtors against creditor who routinely included attorney fees as part of its claim in violation of § 502 and Fed. R. Bankr.P.2016). Nonetheless, the Sixth Circuit specifically rejected *Bessette* in

*Pertuso*[4] and as previously noted, reaffirmed in *Pertuso* its *Kelvin* ruling that § 105 could not be invoked to remedy breaches of § 363. *Pertuso*, 233 F.3d at 423. Although this court is not unsympathetic to the plaintiffs' argument, it sees no legitimate way to bypass or distinguish the Sixth Circuit Court of Appeals' pronouncements on this issue in *Pertuso* and *Kelvin*. *See also Holloway v. Household Auto. Fin. Corp.*, 227 B.R. 501, 504 (N.D.Ill.1998) (no private right of action under §§ 105 or 502 to remedy the submission of fraudulent proofs of claim); *Knox v. Sunstar Acceptance Corp. (In re Knox)*, 237 B.R. 687 (Bankr.N.D.Ill.1999) (no private right of action under §§ 105 or 502 for creditor's practice of filing secured claims in chapter 13 case for amount knowingly higher than security's actual value).

■ On the other hand, to the extent that the first claim of this adversary proceeding constitutes objections to the claims of Capital One in the various cases, it is proper. The fact that the objections were raised in the context of an adversary proceeding rather than as a contested matter does not render the objections invalid. Rule 3007 of the Federal Rules of Bankruptcy Procedure expressly provides that "[i]f an objection to a claim is joined with a demand for relief of the kind specified in Rule 7001, it becomes an adversary proceeding." The plaintiffs in the present case request turnover of the funds wrongfully received by Capital One and injunctive relief. Both are adversary proceedings. *See* Fed. R. Bankr.P. 7001(1)("a proceeding to recover money or property") and (7)("a proceeding to obtain an injunction or other equitable relief").

To summarize, to the extent the plaintiffs' first cause of action asserts a private right of action under § 502, Capital One's motion to dismiss will be granted. In all other respects, the motion will be denied as to the first claim.

**B.** *Violation of Official Form 10; 11 U.S.C. § 105 and 28 U.S.C. § 2201.*

■ In their second claim for relief, the plaintiffs allege that Capital One's filing of claims which improperly include postpetition interest and other charges violates Official Form 10, the proof of claim form. The face of this form directs a creditor to set forth on the form the "Total Amount of Claim at Time Case Filed." The plaintiffs note that Fed. R. Bankr.P. 9009[5] directs

---

**4.** As stated by the Sixth Circuit in *Pertuso:*

The Court of Appeals for the First Circuit recently concluded that § 524 may be enforced by a district court through § 105 without a contempt proceeding having been brought in the bankruptcy court. *Bessette v. Avco Fin. Servs., Inc.*, 230 F.3d 439 (1st Cir.2000). Acknowledging that "§ 105 does not itself create a private right of action," the *Bessette* court went on to say that "a court may invoke § 105(a) 'if the equitable remedy utilized is demonstrably necessary to preserve a right elsewhere provided in the Code....' " *Id.* at 445 (quoting *Noonan v. Secretary of HHS (In re Ludlow Hosp. Soc'y, Inc.)*, 124 F.3d 22, 27 (1st Cir.1997)). To the extent that *Bessette* may be in tension with *Kelvin*, we adhere to the latter case. Section 105 undoubtedly vests bankruptcy courts with statutory contempt powers, but it "does not authorize the bankruptcy courts to create substantive rights that are otherwise unavailable under applicable law...." *United States v. Sutton*, 786 F.2d 1305, 1308 (5th Cir.1986) (citing *Southern Ry. Co. v. Johnson Bronze Co.*, 758 F.2d 137, 141 (3d Cir.1985)).
*Pertuso*, 233 F.3d at 423 n. 1.

**5.** Rule 9009 of the Federal Rules of Bankruptcy Procedures states that:

The Official Forms prescribed by the Judicial Conference of the United States shall be observed and used with alterations as may be appropriate. Forms may be combined and their contents rearranged to permit economies in their use. The Director of the Administrative Office of the United States Courts may issue additional forms

that the official forms "shall be observed and used" and cite *United States v. Bellew*, 35 F.3d 518 (11th Cir.1994), for the proposition that the official forms are judicial orders. As such, the plaintiffs contend that Capital One is guilty of contempt, which the court is empowered to remedy under its inherent powers and the statutory powers provided by § 105.

In its motion to dismiss, Capital One denies that Official Form 10 is a court order and maintains that the statement on the form is merely an instruction on how to fill out a form. Capital One asserts that notwithstanding its alleged failure to comply with that instruction and Rule 9009, it has at most only violated the law and cites the Sixth Circuit Court of Appeals' opinion in *Kelvin* for the proposition that courts can not hold parties in contempt "of law." *Matter of Kelvin Publ'g, Inc.*, 1995 WL 734481, *3.

The court agrees with Capital One that Official Form 10 is not an order of the court and that therefore the failure to comply with the form is not contemptuous. Granted, the Eleventh Circuit in *Bellew* did equate the official forms and bankruptcy rules with judicial orders. At issue in that case was whether the sentence of a criminal defendant convicted of bankruptcy fraud for concealing assets should be increased because the crime involved the "violation of any judicial or administrative order, injunction, decree or process" within the meaning of the federal sentencing guidelines. *Bellew*, 35 F.3d at 519. Although the defendant had not violated any specific court order or decree per se, the

court of appeals noted that Fed. R. Bankr.P. 1007 requires a debtor to file a schedule of assets and liabilities as prescribed by Official Form 1 and that this form requires the debtor to declare the truthfulness of the information under penalty of perjury. *Id.* at 521. In light of Rule 9009 which provides that official forms are to be observed and used, the *Bellew* court concluded that the requirement under the bankruptcy rules and official forms that a debtor truthfully disclose assets fell within the dictionary definition of "order" as a "mandate, precept, command, or direction." *Id.*

Notwithstanding the *Bellew* decision, results contrary to *Bellew* have been reached by other courts. *See United States v. Kennedy*, 233 F.3d 157, 161 n. 5 (2d Cir. 2000) ("We reject the line of cases holding that a defendant's initial concealment of assets also violates a judicial order" and "read the term 'order' … as a consent decree or an adjudicative order or mandate entered pursuant to judicial direction."); *United States v. Thayer*, 201 F.3d 214, 228 (3d Cir.1999) ("The Bankruptcy Rules and Forms have more in common with statutes and procedural rules of general application than with orders of the court, which are directed to identified parties and indicate in specific terms what those parties are required to do."); *United States v. Shadduck*, 112 F.3d 523, 529–30 (1st Cir.1997)("[T]he universal admonitions in the various Official Forms and/or Bankruptcy Rules applicable to all debtors in bankruptcy proceedings [do not] constitute 'judicial or administrative orders.' ").[6]

---

for use under the Code. The forms shall be construed to be consistent with these rules and the Code.

**6.** It should be noted that some of the circuits, including the Sixth Circuit, have concluded that bankruptcy fraud falls within the sentencing guideline under consideration in *Bellew*

based on the conclusion that bankruptcy proceedings are a "judicial process." *See United States v. Guthrie*, 144 F.3d 1006, 1010 (6th Cir.1998), and cases cited therein. The *Guthrie* court expressly observed that in light of this conclusion, it was unnecessary for it to determine whether a "judicial order" had been violated. *Id.* n. 4.

Furthermore, the Sixth Circuit Court of Appeals' decision in *Kelvin* leads this court to conclude that the Sixth Circuit would not impose contempt sanctions for a violation of the official forms and bankruptcy rules. As previously discussed, at issue in *Kelvin* was a violation of 11 U.S.C. § 363 by principals of the debtor for using cash collateral without the creditor's or the court's consent. *Matter of Kelvin Publ'g, Inc.*, 1995 WL 734481, *2. When the bankruptcy court ordered the principals to pay an amount equal to the sum wrongly spent, they appealed. The Sixth Circuit reversed, stating:

> We cannot affirm the judgment against the Kelvins as a proper contempt sanction. There can be no sanction for contempt without sufficiently willful violation of a clear judicial command. . . . We are not prepared to authorize lower courts to hold litigants in contempt "of law"; and believe that the exercise of such a vague mandate would be well beyond the inherent contempt power of federal courts—a power "to be exercised with great caution."

*Id.* at *3.

The Sixth Circuit's caution against "vague mandates" is especially appropriate in the present case. Although the plaintiffs correctly note that Rule 9009 states that the Official Forms are to be "observed and used," the full text of the rule provides that the forms "shall be observed and used *with alterations as may be appropriate*" and that "[f]orms may be combined and their contents rearranged to permit economies in their use." Fed. R. Bankr.P. 9009 (emphasis supplied). The advisory committee note indicates that "the use of the Official Forms has generally been held subject to a 'rule of substantial compliance.'" *See also* 10 COLLIER ON BANKRUPTCY ¶ 9009.02 (15th ed. rev.2001). The flexibility permitted by this rule is inconsistent

with the clarity required of a court order with the potential to subject a violator to contempt. "For a party to be held in contempt, it must have violated a clear and unambiguous order that left no reasonable doubt as to what behavior was expected and who was expected to behave in the indicated fashion." *Project B.A.S.I.C. v. Kemp*, 947 F.2d 11, 17 (1st Cir.1991)(cited with approval in *Matter of Kelvin Publ'g, Inc.*, 1995 WL 734481, *3).

In addition, if the Sixth Circuit had misgivings regarding contempt as the proper punishment for violating the Bankruptcy Code, this court believes that its reluctance would be even greater with respect to the Official Forms, which are neither court orders nor in some courts' view, have the force of law, notwithstanding Rule 9009. In *Simmons*, a chapter 13 debtor argued that the secured creditor violated Official Form 10 by improperly characterizing the full amount owed to it as secured rather than apportioning the claim into secured and unsecured components. *Simmons v. Ford Motor Credit Co. (In re Simmons)*, 237 B.R. 672, 674 (Bankr. N.D.Ill.1999). According to the debtor therein, Official Form 10 was "equivalent to a statutory directive." *Id.* The *Simmons* court disagreed stating:

> [This] court has found nothing to suggest that the official forms have the force and effect of the Bankruptcy Code or Rules. Although Rule 1001 refers to the official forms and Rule 9009 implements them, nothing gives the forms the same force as the Rules. Indeed, one editor's comment on Rule 1001 carefully explains to the contrary: "Unlike the Rules, the Official Forms do not require approval either by the Supreme Court or by Congress, and while they should be observed and should be used, they do not have the force of law." Norton

Bankr.Rules Pamphlet 1997–1998 Edition, p. 3.

*In re Simmons*, 237 B.R. at 675. The *Simmons* court also noted that other courts addressing this issue have agreed with Norton's distinction, although the issue in those cases arose in other contexts. *Id.* (citing *In re Lees*, 192 B.R. 756, 759 (Bankr.D.Mont.1994)("Official forms are not authority on the question of whether tithing is reasonably necessary for the support of the Debtors or their dependents."); *In re Packham*, 126 B.R. 603 (Bankr. D.Utah 1991)(official form for *Schedule J* which contains space for charitable contributions "does not provide authority, or a glimpse of legislative intent," on the issue of whether religious or charitable contributions are a necessary expense); *In re Curry*, 77 B.R. 969, 970 (Bankr.S.D.Fla. 1987)("The Forms, though prescribed by the Judicial Conference (B.R.9009) do not ... constitute judicial precedent that religious and charitable contributions may ... be imposed by a chapter 13 debtor upon his creditors.")). *See also In re I.G. Servs. Ltd.*, 244 B.R. 377, 385 (Bankr.W.D.Tex. 2000), *rev'd on other grounds, In re Blackwell*, 263 B.R. 505 (W.D.Tex. 2000)("[F]orms do not themselves have the force of law."). *But see In re Navarro*, 83 B.R. 348, 356 (Bankr.E.D.Pa.1988)(court found it significant that the Official Forms contained a space to list religious and other charitable contributions). Accordingly, based on the foregoing, Capital One's motion to dismiss for failure to state a claim will be granted with respect to plaintiffs' second cause of action.

C. *Violation of the Automatic Stay; 11 U.S.C. § 362.*

 The plaintiffs' third claim pertains to violation of the automatic stay imposed by 11 U.S.C. § 362. The plaintiffs allege that Capital One violated § 362 "which prohibits any post-petition acts which seeks to obtain possession of property of the estate."[7] More specifically, the plaintiffs contend that Capital One violated the automatic stay when it:

failed to terminate or end the accrual of interest and/or late fees and/or over-limit fees on the credit card accounts of Plaintiffs upon receipt of the Notice of Commencement of their case and the entry of the 11 U.S.C. § 362 automatic stay order; failed to deduct or subtract the post-petition interest and/or post-petition late fees and/or post-petition over-limit fees from the credit card accounts of Plaintiffs when the proofs of claim were prepared; directed its various agents to affix their signatures to proof(s) of claim which were subsequently filed in the Chapter 13 case of Plaintiffs which represent the amount owed by them to Capital One as of the petition date, when in fact, the amounts were calculated by Capital One as of the date of the preparation of the claims or a date not the petition date; [and] transmitted via the United States mail to the Clerk of the Court and ultimately to the Chapter 13 Trustee for payment from the Chapter 13 estates of Plaintiffs claims processed, prepared and signed by the defendant, Capital One, which contained in its amounts post-petition interest and/or post-petition late fees and/or post-petition over-limit fees assessed in violation of 11 U.S.C. § 362.

In its motion to dismiss, Capital One asserts that only "willful" stay violations are actionable under § 362(h) and that absent an allegation of willfulness, there is no private right of action for stay violations. Capital One also asserts that the plaintiffs

---

**7.** Although no particular provision of § 362 is cited, acts to obtain possession of property of the estate are specifically prohibited by subsection (a)(3). *See* 11 U.S.C. § 362(a)(3).

are not entitled to recovery under § 362(h) because they have suffered no damages as a result of Capital One's alleged conduct and, thus, lack standing. The plaintiffs respond that willfulness has been alleged in the amended complaint and dispute the contention that no damages have been sustained.

Regardless of the standing and damage issues, this court concludes that Capital One's alleged conduct does not constitute violations of the automatic stay even if the plaintiffs have been damaged by Capital One's conduct and have standing to seek relief. The plaintiffs contend that Capital One violated the stay when it failed to stop the accrual of interest and other fees on the debtors' credit card accounts upon receiving notice of the commencement of their bankruptcy cases and that it similarly violated the stay by not deducting these improper amounts when the proofs of claim were prepared. However, other than possibly in a setoff context, mere internal bookkeeping entries by a creditor, in and of themselves, do not generally produce any effect on a debtor, much less a change or an attempted change in possession of property of the estate. Capital One or any creditor could produce all kinds of paperwork which if communicated to the debtor or a third party would violate the stay, but absent that communication, some overt act, or resulting effect on the debtor, no violation has occurred. *Cf. Savers Fed. Sav. and Loan Ass'n v. McCarthy (In re Knightsbridge Dev. Co.)*, 884 F.2d 145, 148 (4th Cir.1989)(amendment of lis pendens was innocuous under § 362(a); it had no effect on the bankruptcy estate, did not interfere with debtor's possession of or control over property of the estate and was not an "exercise of control" over the property); *Finnie v. First Union Nat'l Bank*, 275 B.R. 743, 745 (E.D.Va.2002)(creditor's sale of discharged debt did not violate the discharge injunc-

tion which only applies to actions taken by a creditor to collect *from* the debtor); *In re Capgro Leasing Assocs.*, 169 B.R. 305, 315–16 (Bankr.E.D.N.Y.1994)("entry of a judgment will constitute a 'ministerial act' [not in violation of the stay] where the judicial function has been completed and the clerk has merely to perform the rote function of entering the judgment upon the court's docket").

■ The plaintiffs contend, of course, that Capital One made the necessary overt act by filing proofs of claim for improper amounts. However, "the automatic stay serves to protect the bankruptcy estate from actions taken by creditors outside the bankruptcy court forum, not legal actions taken within the bankruptcy court." *In re Sammon*, 253 B.R. 672, 680 (Bankr.D.S.C. 2000). Stated differently, "the stay does not operate against the court with jurisdiction over the bankrupt." *Robert Christopher Assocs. v. Franklin Realty Group, Inc. (In re FRG, Inc.)*, 121 B.R. 710, 714 (Bankr.E.D.Pa.1990)(quoting *Teerlink v. Lambert (In re Teerlink Ranch Ltd.)*, 886 F.2d 1233, 1237 (9th Cir.1989)). *See also Prewitt v. North Coast Village, Ltd. (In re North Coast Village, Ltd.)*, 135 B.R. 641, 644 (9th Cir. BAP 1992)("[T]he automatic stay does not apply to proceedings against the debtor in the home bankruptcy court.").

Facts similar to those in the present case were before the court in *Sammon*, wherein the debtors asserted that the amount set forth in a proof of claim filed by the IRS was so grossly overstated that it constituted a violation of the automatic stay. *In re Sammon*, 253 B.R. at 680. The court rejected this assertion, noting that "the filing of a proof of claim is expressly provided for by Fed. R. Bankr.P. 3002 and is necessary for a creditor to protect its interests in a Chapter 13 case."

*Id.* The *Sammon* court also concluded that "[t]he filing of a Proof of Claim before a bankruptcy court, which is in control over the process of administering the property of the bankruptcy estate, is the logical equivalent of a request for relief from the automatic stay, which cannot in itself constitute a violation of the stay pursuant to § 362(h)." *Id.* at 681. Every other court considering the issue in a reported decision has reached a similar conclusion. *See, e.g., United States v. Inslaw, Inc.,* 932 F.2d 1467 (D.C.Cir.1991)("For obvious reasons ... courts have recognized that § 362(a) cannot stay actions specifically authorized elsewhere in the bankruptcy code."); *Nelson v. Providian Nat'l Bank (In re Nelson),* 234 B.R. 528, 534 (Bankr.M.D.Fla. 1999)("The contention that the exercise of a mandated statutory right under the Bankruptcy Code [such as the filing of a nondischargeability complaint] is a violation of the automatic stay is almost as absurd as a contention that any creditor who files a proof of claim in bankruptcy violated the automatic stay."); *Brown v. Sayyah (In re I.C.H. Corp.),* 219 B.R. 176, 190 (Bankr.N.D.Tex.1998), *rev'd on other grounds,* 230 B.R. 88 (N.D.Tex.1999)("The automatic stay is not applicable to assertion of a claim in a proof of claim filed in a Bankruptcy Court."); *In re Fiedel Country Day School,* 55 B.R. 229, 230 (Bankr.E.D.N.Y.1985)(creditor's filing of proof of claim did not violate § 362(a)(3) because filing permitted by the Code). Based on the foregoing, this court concludes that the plaintiffs' third cause of action premised on violation of the automatic stay fails to state a claim upon which relief can be granted and therefore must be dismissed.

### D. Contempt of the Orders of Confirmation; 11 U.S.C. § 1327.

■ In their fourth claim, the plaintiffs allege that Capital One is bound by the individual debtors' orders of confirmation pursuant to 11 U.S.C. § 1327[8] and that these orders provide for all unsecured claims to receive the same confirmed dividend payment. The plaintiffs contend that Capital One circumvents this specified dividend amount by filing inflated claims. Although the amended complaint is not entirely clear on this point, it appears that the plaintiffs request that Capital One be held in contempt for violation of the confirmation orders.

In its memorandum in support of its motion to dismiss, Capital One asserts that "the Plaintiffs have neither alleged nor cited to any provisions in any confirmation order that prohibit any of Capital One's actions." Capital One also cites the *Kelvin* holding discussed above, that in order to sanction a party for contempt, there must be a clear judicial command and a violation of that command. *Matter of Kelvin Publ'g, Inc.,* 1995 WL 734481, *3. Capital One maintains that the plaintiffs have not pointed to any such "judicial command, let alone a *clear* judicial command, that prohibits the alleged wrongful conduct in this case." In response, the plaintiffs state that "[w]hile it may be true that the rule against post-petition interest is so well-known that courts do not routinely restate the rule in their confirmation orders, this does not mean that Capital One's scheme is lawful." The plaintiffs go on to state that whether designated as contempt, or as an equitable order under § 105 to carry out the provisions of § 1327 and other

---

**8.** Subsection (a) of § 1327 provides that:

The provisions of a confirmed plan bind the debtor and each creditor, whether or not the claim of such creditor is provided for by the plan, and whether or not such creditor has objected to, has accepted, or has rejected the plan.

sections of the Bankruptcy Code, this court has the authority to declare and enforce the substantive law of the Bankruptcy Code.

■ To the extent that the plaintiffs are asserting a direct cause of action or seeking contempt sanctions for Capital One's alleged violation of § 1327, the amended complaint fails to state a claim upon which relief can be granted. As with respect to § 502, *Pertuso* and *Kelvin* establish that there is no private right of action for violations of § 1327. Similarly, as with respect to the cash collateral provision under consideration in *Kelvin,* there can be no contempt of the law for violating § 1327.

■ The only other issue remaining concerning the plaintiffs' fourth claim is whether Capital One's actions, even if true, constitute violations by Capital One of the confirmation orders entered in the debtors' chapter 13 cases. A review of these orders reveals that three of the four confirmed plans make the following statement regarding unsecured claims:

> UNSECURED CREDITORS. If no secured treatment is provided herein, the claim will be treated as unsecured and depending on the allowed claims will be paid the resulting dividend within the following designated dividend range; provided, however, that if the funds available exceed the specified dividend range creditors will be entitled to the greater dividend.
>
> __71%–100%; X 21%–70%; __5%–20%; __less than 5%; or, __100%

The fourth confirmed plan provides the following with respect to unsecured claims: "The dividend to unsecured creditors is to [sic] 30% or the total funds scheduled to be paid over the life of the plan, whichever is greater."

Although these provisions and the orders confirming them establish the plan treatment for unsecured creditors including Capital One, they do not appear to order or direct Capital One, or any other creditor for that matter, to do anything. Instead, the only persons who are specifically directed by the plans and confirmation orders are the debtors whom the plans specify will make the plan payments, ("[T]he Debtor(s) will pay the Chapter 13 Trustee the sum of …."), and arguably the chapter 13 trustee, since one of the purposes of each plan is to advise the trustee how to distribute the plan payments. *See* 11 U.S.C. § 1326(a)(2)("If a plan is confirmed, the trustee shall distribute any such payment in accordance with the plan…."); *In re Hallmark,* 225 B.R. 192, 195 (Bankr.C.D.Cal.1998)("Courts have interpreted § 1326(a)(2) to mean that the chapter 13 trustee has an affirmative duty to disburse payments in accordance with the terms of the confirmed plan.").

■ "A corollary of the requirement that orders enforceable through the contempt power be clear and unambiguous is that those who would suffer penalties for disobedience must be aware not merely of an order's existence, but also of the fact the order is directed at them." *Project B.A.S.I.C. v. Kemp,* 947 F.2d at 17 (citing, *inter alia, Baddock v. Villard (In re Baum),* 606 F.2d 592, 593 (5th Cir.1979)(reversing finding of contempt because the order in question "was not addressed specifically" to the putative contemnor); *Berry v. Midtown Serv. Corp.,* 104 F.2d 107, 111 (2d Cir.1939)("Before a person should be subject to punishment for violating a command of the court, the order should inform him in definite terms as to the duties thereby imposed upon him.")). There is nothing in the plans or the confirmation orders in the instant cases that advised Capital One in clear and

unambiguous terms what it was required to do or abstain from doing. The general directive as to what unsecured creditors are to receive under the plan is not of sufficient clarity as to Capital One in particular to subject it to contempt sanctions, even if Capital One is receiving greater than its specified dividend due to its inflated claims as the plaintiffs allege. While this fact may subject Capital One to liability for return of any payment which is contrary to the confirmed plans, as discussed hereafter in the following section of this opinion, it does not provide a basis for contempt. Accordingly, the fourth cause of action of the plaintiffs' amended complaint fails to state a claim as a matter of law.

E. *Illegal Taking or Attempting To Take Property of Estate; 11 U.S.C. §§ 1306 and 542.*

■ In the fifth claim set forth in the amended complaint, the plaintiffs contend that payments made by the debtors into their plans for distribution to creditors are property of the estate under 11 U.S.C. § 1306. The plaintiffs allege that Capital One has "wrongfully and illegally tak[en] more than its proportionate share of property of the estate." As such, the plaintiffs assert that Capital One is subject "to the mandatory requirements of 11 U.S.C. § 542 and the turnover to the Chapter 13 Trustee of any distributions wrongfully received by [it] and/or an injunction enjoining the defendant's attempt to wrongfully take estate property from the named plaintiffs/debtors and members of the debtor class including all future Chapter 13 debtors."

In its motion to dismiss, Capital One argues that plaintiffs' contentions do not fall within either subsection (a) or (b) of § 542 because Capital One is not in possession of any property that the trustee may use, sell or lease under § 363 of the Bankruptcy Code or that the debtors can exempt under 11 U.S.C. § 522. Capital One also maintains that the assertion of a disputed right to payment does not give rise to a turnover action under § 542. In its response to the motion to dismiss, the plaintiffs maintain that § 542 permits the recovery of any property of the estate and scoff at the contention that this court is powerless to order a return of money obtained by Capital One "through fraud or similar unlawfulness."

The parties have not identified and the court has been unable to locate any cases wherein § 542 was utilized to recover an overpayment to a creditor. Accordingly, this court must examine the language of § 542 and ascertain whether it provides a basis for the relief requested by the plaintiffs. Subsection (a) of the statute reads as follows:

> Except as provided in subsection (c) or (d) of this section, an entity, other than a custodian, in possession, custody, or control, during the case, of property that the trustee may use, sell, or lease under section 363 of this title, or that the debtor may exempt under section 522 of this title, shall deliver to the trustee, and account for, such property or the value of such property, unless such property is of inconsequential value or benefit to the estate.

From their memoranda of law, both parties appear to interpret § 542(a) as addressing turnover of property of the estate. Capital One argues that § 542(a) is not available to the plaintiffs because the debtors' plan payments ceased being property of the estate once they were distributed to it. The plaintiffs counter that property obtained by fraud does not change ownership, stating that if the law were otherwise, "one might as well say that there's no such thing as bank robbery

because once the robber leaves the bank with the money it's not the bank's money any more."

Assuming for the moment that plan payments remain property of the estate even after they are disbursed to creditors, it must first be addressed whether such payments are recoverable under § 542 as a matter of law. Generally, one assumes as the plaintiffs suggest, the only relevant inquiry is whether the property is property of the estate: if it is, it must be turned over under § 542(a). In other words, the language in § 542 which provides for turnover of "property that the trustee may use, sell, or lease under section 363 . . . or that the debtor may exempt under section 522" is usually synonymous with term "property of the estate." This result is not surprising since a debtor's exemptions under § 522 are claimed in property of the estate and generally, property capable of being used, sold or leased by the trustee under § 363 is limited to property of the estate. Based on these provisions and the legislative history to § 542, many courts, including this one, have shorthandedly referred to § 542 as addressing turnover of property of the estate. *See, e.g., In re Bourne*, 262 B.R. 745, 754–55 (Bankr.E.D.Tenn.2001)(because § 363(b) permits a trustee to use, sell, or lease property of the estate, § 542(a) by implication pertains to turnover of property of the estate); *Barfield v. Sana of Jacksonville, Inc. (In re Barfield)*, 261 B.R. 793, 797 (Bankr.M.D.Fla.2001)("A Chapter 13 debtor may bring an adversary proceeding for the turnover of property of the estate pursuant to 11 U.S.C. § 542(a) and Federal Rule of Bankruptcy Procedure 7001(1)."); *Marlow v. Oakland Gin Co. (In re Julien Co.)*, 128 B.R. 987, 993 (Bankr.W.D.Tenn.1991)("[T]urnover is intended as a remedy to obtain what is acknowledged to be property of the debtor's estate."). *See also* H.R. REP. No. 595, at 369 (1977), U.S.CODE CONG. & AD-MIN.NEWS 1978, at 5963, 6325; S. REP. No. 989, at 84 (1978), U.S.CODE CONG. & AD-MIN.NEWS 1978, at 5787, 5870 ("Subsection (a) of this section requires anyone holding property of the estate on the date of the filing of the petition, or property that the trustee may use, sell, or lease under section 363, to deliver it to the trustee.").

Congress, however, in enacting § 542, did not broadly provide for turnover of all property of the estate; instead, the legislature more narrowly restricted turnover to property of the estate that the trustee may use, lease, or sell under § 363 or that the debtor may exempt under § 522.[9] *See United States v. Poff*, 926 F.2d 588, 591 (7th Cir.1991)("Courts often say that the choice of different words reflects an intent to say something different."). Thus, the appropriate inquiry for application of § 542(a) is whether the property is exemptible by the debtor or usable, sellable or leasable by the trustee under § 363. The property at issue must fall within one of these two categories in order to be recoverable under § 542(a).

■■■ When this criteria is applied to the facts of the case at hand, it is clear that the first situation does not exist: the overpayments can not be exempted by the chapter 13 debtors. Upon confirmation,

**9.** One court has concluded that a § 542(a) recovery may be broader than property of the estate. *See United States v. Birco Mining Co. (In re Birco Mining Co.)*, 14 B.R. 1017, 1019 (N.D.Ala.1981)("The property which may be ordered to be turned over under 11 U.S.C. § 542 is not in all circumstances limited to the 'property of the estate.' A turnover order may under the wording of that section extend to property which the trustee may 'use, sell, or lease under section 363,' and that referenced section permits in certain situations a trustee to sell more than the property of the estate. *See* 11 U.S.C. § 363(f, g, h).").

the plan payments are paid to the trustee for the benefit of the creditors and may not be recovered by the debtor even if the case is subsequently converted or dismissed. *See, e.g., O'Quinn v. Brewer (In re O'Quinn)*, 143 B.R. 408, 411 (Bankr.S.D.Miss.1992)(undistributed chapter 13 plan payments made pursuant to confirmed plan may not be exempted by debtor).

Nor do the overpayments constitute property that the "trustee may use, sell, or lease under section 363." In a chapter 13 case the debtor as a general rule remains in possession of property of the estate. *See* 11 U.S.C. § 1306(b)("Except as provided in a confirmed plan or order confirming a plan, the debtor shall remain in possession of all property of the estate."). Concordantly, it is the debtor rather than the chapter 13 trustee who exercises the authority of a trustee under § 363 to use, sell or lease property of the estate. *See* 11 U.S.C. § 1303 ("Subject to any limitations on a trustee under this chapter, the debtor shall have, exclusive of the trustee, the rights and powers of a trustee under sections 363(b), 363(d), 363(e), 363(f), and 363(*l*), of this title."). As such, in order to apply § 542(a) in a chapter 13 context, the pertinent question is not whether the trustee may use, sell or lease the property but whether the chapter 13 debtor may utilize the property. *See TranSouth Fin. Corp. v. Sharon (In re Sharon)*, 234 B.R. 676, 687 (6th Cir. BAP 1999)("To the extent a Chapter 13 debtor can ... use property of the estate under § 363, the debtor succeeds to the mandate in § 542(a)

that compels delivery of property that is usable under § 363."). When the property at issue is plan payments made to a chapter 13 trustee pursuant to the terms of a confirmed plan, the answer is well established: the debtor has no right or entitlement to those payments. *See In re Lennon*, 65 B.R. 130, 136 (Bankr.N.D.Ga.1986)(debtor has no continuing interest in payments made pursuant to a confirmed plan). Just as a debtor has no ability to claim the funds as exempt, the debtor has no authority to use the plan payments in any respect. Therefore, they are not recoverable under § 542(a).

■ All is not lost for the plaintiffs, however. As noted by Bankruptcy Judge Keith M. Lundin in his treatise CHAPTER 13 BANKRUPTCY, "[a]lthough not founded in any statutory avoidance or recovery power, courts have authorized Chapter 13 trustees to recover overpayments to creditors." 1 CHAPTER 13 BANKRUPTCY § 61.1 (3d ed.2000). For example, in *Stevens* the bankruptcy court cited a chapter 13 trustee's fiduciary obligations as the basis for this authority, concluding "[t]he Chapter 13 trustee's power to recover overpayment is inherent in the overall scheme of a trustee's fiduciary duties as a necessary means to ensure that the trustee's payment system functions smoothly." *Stevens v. Baxter (In re Stevens)*, 187 B.R. 48, 51–52 (Bankr.S.D.Ga.1995), *aff'd in part and rev'd in part, Ford Motor Credit Co. v. Stevens (In re Stevens)*, 130 F.3d 1027, 1031 (11th Cir.1997).[10]

---

**10.** The bankruptcy court in *Stevens* had concluded that the chapter 13 trustee could recover the overpayment to a creditor by withholding payments due to the creditor in other chapter 13 cases. *In re Stevens*, 187 B.R. at 51–52. Upon appeal, the Eleventh Circuit Court of Appeals upheld the ruling that the creditor was required to return the overpay-

ment to the chapter 13 trustee, but reversed the decision that the trustee could withhold the amount of the overpayment from payments owed to the creditor in other unrelated cases. *In re Stevens*, 130 F.3d at 1031. ("As a fiduciary of the Chapter 13 estate, a trustee is authorized to bring an adversary action to recover overpayments from a creditor.")

Similarly, the chapter 13 trustee in *Talbot* sought disgorgement of overpayments made by her to the Internal Revenue Service. *United States v. Richman (In re Talbot)*, 124 F.3d 1201 (10th Cir.1997). The court held that the IRS's receipt of funds outside the plan by the debtors enabled it to receive more than it was entitled under the terms of the debtors' confirmed plan. Based on the binding effect of confirmation as provided by 11 U.S.C. § 1327(a), the court of appeals concluded that "the bankruptcy court had the power to order the IRS to disgorge all sums that it extracted from the Talbots in derogation of the Plan." *Id.* at 1209.

Likewise, in the *Vaughn* decision, the chapter 13 trustee commenced a turnover adversary proceeding against a credit union, based on the creditor's receipt of payments outside the plan from the debtor even though the debt was being paid through the plan by the trustee. *Hope v. Brown & Williamson Fed. Credit Union (Matter of Vaughn)*, 110 B.R. 94 (Bankr. M.D.Ga.1990). The bankruptcy court concluded that the credit union had received more than the allowed amount of its unsecured claim, contrary to the binding provisions of the plan, and resulting in disparate treatment among creditors of the same class. *Id.* at 95–96. Based on these knowing violations of the Bankruptcy Code, the court concluded that the trustee was entitled to recover the overpayment plus costs of the adversary proceeding. *Id.* at 96. *See also United States v. Clifford (In re Clifford)*, 255 B.R. 258 (D.Mass. 2000)(upon sustaining chapter 13 debtor's objection to IRS's claim, court ordered creditor to disgorge funds it had received in excess of the allowed amount of its claim); *In re Martin*, 130 B.R. 951 (Bankr. N.D.Iowa 1991)(creditor ordered to disgorge to chapter 12 trustee and debtor life insurance proceeds paid to creditor outside plan as there was no provision in plan for payment and proceeds were property of the estate); *Matter of Randolph*, 2001 WL 1223139, \*11–\*13 (Bankr.N.D.Ind.2001) (recognizing authority of chapter 13 trustee to recover overpayment, but not finding refund appropriate where error was attributable to trustee).

■ In this regard, the court notes that § 502(j) of the Bankruptcy Code addresses reconsideration for cause of a claim that has been previously allowed or disallowed. The last sentence of that subsection states that "[t]his subsection does not alter or modify the trustee's right to recover from a creditor any excess payment or transfer made to such creditor." 11 U.S.C. § 502(j). It is clear from this statement that a trustee's authority to recover overpayments from a creditor is implied or contemplated by the Bankruptcy Code notwithstanding the absence of a specific Bankruptcy Code provision expressly granting such authority. Based on all of the foregoing, Capital One's contention that plaintiffs' fifth cause of action should be dismissed is without merit and Capital One's motion to dismiss will be denied in this regard.

F. *Abuse of Process, Misrepresentation, Unfair Discriminatory Treatment of Creditors, and Injunctive and Declaratory Relief; 11 U.S.C. §§ 1322(b)(1) and 105 and 28 U.S.C. § 2201.*

■ With respect to the allegation of "Unfair Discriminatory Treatment," the plaintiffs state in the sixth claim of their amended complaint that the confirmation orders entered in these bankruptcy cases "contain no provision which allows a separate classification for the treatment of the claims of the defendant, Capital One, since the debtors did not propose a separate

classification. As a result of Capital One's wrongful action, an unfair discriminatory treatment has occurred which is contrary to 11 U.S.C. § 1322(b)(1)."

In response to this claim, Capital One argues that it could not have violated § 1322(b)(1) because this provision, "which governs the contents of chapter 13 plans, only proscribes conduct *of debtors* (and perhaps the chapter 13 trustee)." The plaintiffs counter that whether Capital One has technically violated § 1322(b)(1) "is not the point." Rather, this section, along with the others cited by plaintiffs, establish "the important substantive rule of bankruptcy law prohibiting post-petition interest (and the like) and fostering equal treatment among creditors" and, that this "Court has the power under Section 105 to do whatever is 'appropriate' . . . to carry out those provisions."

11 U.S.C. § 1322 does set forth the mandatory and permissible contents of a chapter 13 plan. Mandatory plan provisions are set out in subsection (a), while permissive provisions are contained in subsection (b). 8 COLLIER ON BANKRUPTCY ¶ 1322.01 (15th ed. rev.2001). Paragraph (1) of § 1322(b) states that:

> Subject to subsections (a) and (c) of this section, the plan may . . . designate a class or classes of unsecured claims, as provided in section 1122 of this title, but may not discriminate unfairly against any class so designated; however, such plan may treat claims for a consumer debt of the debtor if an individual is liable on such consumer debt with the debtor differently than other unsecured claims.

Capital One correctly observes that because § 1322(b)(1) pertains to the contents of a plan, only a plan proponent can act in violation of this statute by proposing a plan which discriminates unfairly against a designated class. As Capital One has not

proposed any plans or plan modifications in these bankruptcy cases, it cannot be said to have violated the dictates of § 1322(b)(1).

Regarding plaintiffs' counter argument that it is irrelevant whether Capital One has violated § 1322(b)(1) and the critical point is that § 1322(b)(1) sets forth a rule of substantive law which the court can enforce with its § 105 powers, this court must disagree. Just as the debtor in *Kelvin* requested damages for a violation of the cash collateral provisions in the Bankruptcy Code, the plaintiffs herein seek damages which have resulted from an affront to the plan provision requirements of § 1322. The Sixth Circuit plainly held in *Kelvin* and reaffirmed in *Pertuso* that § 105 does not permit a court to add to the remedies expressly provided by the Bankruptcy Code. *See Pertuso*, 233 F.3d at 423; *Matter of Kelvin Publ'g, Inc.*, 1995 WL 734481, *4. The Bankruptcy Code already provides an express remedy for violations of § 1322(b): the plan proponent will be unable to obtain confirmation of the proposed plan. *See* 11 U.S.C. § 1325(a)(1). This court is unable to divine any basis for distinguishing this situation from those presented in *Kelvin* and *Pertuso*.

This same issue was considered by the court in *Keycorp Mortgage* wherein the debtor alleged that the creditor had violated § 1322(b)(5) which states that the plan may provide for the curing of any default within a reasonable time and maintenance of payments while the case is pending. *Smith v. Keycorp Mortgage, Inc.*, 151 B.R. 870, 876 (N.D.Ill.1993). The debtor therein asserted that the creditor violated this provision by assessing late charges on the mortgage payments made by the chapter 13 trustee during the pendency of the debtor's plan. Although the court acknowledged that it could adjudicate whether the obligation to the creditor had been

discharged, the court concluded that neither the Bankruptcy Code nor the debtor's plan provided a substantive right of action for damages against the creditor for its effort to collect the alleged discharged debt. *Id.* at 875–77. The court observed that § 1322 did not expressly provide for a private right of action and no right of action was implied, utilizing the *Cort* factors. *Id.* at 875. The district court also rejected the notion that § 105 provided the requisite authority concluding that "this general provision does not of itself create a private right of action for any action contrary to the purpose of Chapter 13." *Id.* at 876.

■ In this same vein, the plaintiffs in the present adversary proceeding may not assert §§ 1322(b)(1) and 105 as a basis for a direct cause of action against Capital One. Nonetheless, as *Keycorp Mortgage* illustrates, the plaintiffs may assert that Capital One's claims should be disallowed and monies wrongfully obtained by it returned based on the argument that to allow the creditor to keep the overpayment would constitute a violation of § 1322. As previously noted, disgorgement has been ordered by the courts when payments to a creditor allowed it to receive more than its allowed claim, resulting in disparate treatment of unsecured claims. *See Matter of Vaughn*, 110 B.R. at 95–96.

■ With respect to the material misrepresentation argument, the plaintiffs allege that Capital One "knowingly and willingly made false material misrepresentations to the Court by using Official Form 10 and the language contained therein." These alleged misrepresentations were made with respect to the amount of the claim which amount was supposed to represent the amount of the claim at the time the bankruptcy case was filed.

Regardless of whether these allegations state a claim for relief for material misrepresentation under Tennessee law, the *Pertuso* decision dictates that this claim must be dismissed because it is preempted by federal law. In *Pertuso*, the debtor not only argued that the creditor's action in collecting payments on unenforceable reaffirmation agreements violated § 524 of the Bankruptcy Code, but also asserted a state law claim of unjust enrichment. *Pertuso*, 233 F.3d at 420. The Sixth Circuit Court of Appeals concluded that the district court had rightfully dismissed this claim due to the exclusively federal nature of bankruptcy proceedings. As stated by the court:

> Several factors highlight the exclusively federal nature of bankruptcy proceedings. The Constitution grants Congress the authority to establish "uniform Laws on the subject of Bankruptcies." U.S. Const. art. I, § 8. Congress has wielded this power by creating comprehensive regulations on the subject and by vesting exclusive jurisdiction over bankruptcy matters in the federal district courts. 28 U.S.C. § 1334(a). The pervasive nature of Congress' bankruptcy regulation can be seen just by glancing at the Code:
>
>> "A mere browse through the complex, detailed, and comprehensive provisions of the lengthy Bankruptcy Code, 11 U.S.C. §§ 101 *et seq.*, demonstrates Congress's intent to create a whole system under federal control which is designed to bring together and adjust all of the rights and duties of creditors and embarrassed debtors alike. While it is true that bankruptcy law makes reference to state law at many points, the adjustment of rights and duties within the bankruptcy process itself is uniquely and exclusively federal. It is very unlikely that Congress intended to permit the super-

imposition of state remedies on the many activities that might be undertaken in the management of the bankruptcy process." *MSR Exploration, Ltd. v. Meridian Oil, Inc.,* 74 F.3d 910, 914 (9th Cir.1996).

. . . .

As Ford correctly points out, the Pertusos' state law claims presuppose a violation of the Bankruptcy Code. Permitting assertion of a host of state law causes of action to redress wrongs under the Bankruptcy Code would undermine the uniformity the Code endeavors to preserve and would "stand as an obstacle to the accomplishment and execution of the full purposes and objectives of Congress." *Bibbo,* 151 F.3d at 562–63. Accordingly, and because Congress has preempted the field, the Pertusos may not assert these claims under state law. *Pertuso,* 233 F.3d at 425–26. *See also Bessette,* 230 F.3d at 447 ("[T]he broad enforcement power under the Bankruptcy Code preempts virtually all alternative mechanisms for remedying violations of the Code."); *Cox v. Zale Delaware, Inc.,* 1998 WL 397841, *5 (N.D.Ill.1998) (state law consumer fraud counts were preempted by Bankruptcy Code, whose "expansive reach . . . preempts virtually all claims relating to alleged misconduct in the bankruptcy courts"); *In re Knox,* 237 B.R. at 702 (debtor's state law consumer fraud claim based on creditor's practice of intentionally submitting inflated secured claims in chapter 13 cases preempted by federal law).

In the present case, as in *Pertuso,* the plaintiffs' state law claim of material misrepresentation "presuppose[s] a violation of the Bankruptcy Code." *Pertuso,* 233 F.3d at 426. Because the Sixth Circuit has directed that a court may not permit the assertion of state law causes of action to redress wrongs under the Bankruptcy Code, *id.;* the plaintiffs' claim for material misrepresentation must be dismissed.

With respect to the abuse of process assertion, the plaintiffs allege in the amended complaint that Capital One's "systematic pattern of falsely misrepresenting the net amount of its claims is an egregious abuse of process that has occurred, is occurring and will continue to occur." Capital One argues that even if the allegations regarding knowingly filing overstated claims are true, the practice does not constitute abuse of process because "where legal process is used to accomplish its designed purpose, there is no abuse of process," quoting *Captran Creditors Trust v. North Am. Title Ins. Agency, Inc. (In re Captran Creditors Trust),* 116 B.R. 845, 853 (Bankr.M.D.Fla.1990). The plaintiffs respond by rejecting the assertion that "Capital One used Form 10 for its lawful and intended purpose" and stating that the "lawful and intended purpose of that Form was (as it says on the Form) to allow people with arguably valid claims to make them, *calculated as of the date the petition was filed.*"

▮ As with respect to the plaintiffs' material misrepresentation claim, if the plaintiffs are seeking to recover for Capital One's commission of the abuse of process tort, the claim must be dismissed because it is preempted by the Bankruptcy Code, regardless of whether the allegations sufficiently set forth a basis for relief under state law. *See Pertuso,* 233 F.3d at 426. This court, however, views the allegations of the amended complaint regarding abuse of process in a different light than that asserted by Capital One. Although the Bankruptcy Code provides no explicit cause of action for a litigant who harmed by a perversion of the bankruptcy process, the second sentence of 11 U.S.C. § 105(a) expressly provides that "[n]o provision of this title providing for the raising of an

issue by a party in interest shall be construed to preclude the court from, sua sponte, taking any action or making any determination necessary or appropriate to enforce or implement court orders or rules, or to prevent an abuse of process." This provision plainly contemplates that the court may act to "prevent an abuse of process."

 Courts have recognized that this authority is not limited to sua sponte actions but that the bankruptcy court may act on the request of a party in interest. *See, e.g., Gibbons v. Haddad (In re Haddad),* 68 B.R. 944, 948 (Bankr.D.Mass. 1987); *Williams v. Clark (In re Clark),* 91 B.R. 324, 332–34 (Bankr.E.D.Pa.1988). And, although § 105 "does not authorize the bankruptcy courts to create substantive rights that are otherwise unavailable under applicable law," *Pertuso,* 233 F.3d at 423, n. 1; "[b]ankruptcy courts ... enjoy inherent power to sanction parties for improper conduct." *Mapother & Mapother v. Cooper (In re Downs),* 103 F.3d 472, 477 (6th Cir.1996). This inherent power authorizes federal courts "to protect their proceedings and judgments in the course of discharging their traditional responsibilities." *Degen v. United States,* 517 U.S. 820, 823, 116 S.Ct. 1777, 135 L.Ed.2d 102 (1996). *See also Chambers v. NASCO, Inc.,* 501 U.S. 32, 50, 111 S.Ct. 2123, 115 L.Ed.2d 27 (1991)(recognizing inherent power of federal district court to sanction conduct abusive of judicial process); *Jones v. Bank of Santa Fe (In re Courtesy Inns, Ltd.),* 40 F.3d 1084, 1089 (10th Cir.1994) (Section "105 intended to imbue the bankruptcy courts with the inherent power recognized by the Supreme Court in *Chambers* .... The power to maintain order and confine improper behavior in its own proceedings seems a necessary adjunct to any tribunal charged by law with the adjudication of disputes.").

Similarly, other courts have utilized their inherent authority to prevent and sanction abuses of judicial power. *See In re Courtesy Inns, Ltd.,* 40 F.3d at 1090 (bankruptcy court had inherent authority to sanction debtor's president for bad faith filing of bankruptcy petition); *Engel v. Bresset (In re Engel),* 246 B.R. 784, 789–90 (Bankr.M.D.Pa.2000)(§ 105 authorizes bankruptcy court to exercise its inherent powers to sanction attorney's bad faith filing of inaccurate schedules); *First Fed. Sav. and Loan Ass'n of Largo v. Froid (In re Froid),* 106 B.R. 293, 296 (Bankr. M.D.Fla.1989) (power to correct abusive practices acknowledged but no sanctions entered against creditor who filed and prosecuted discharge complaint); *Mortgage Mart, Inc. v. Rechnitzer (In re Chisum),* 68 B.R. 471, 473 (9th Cir. BAP 1986) (recognizing power of bankruptcy court to impose sanctions on parties and counsel who willfully abuse the judicial process, but not finding sanctions appropriate against debtor and his attorney for their repeated bankruptcy filings).

 "The sanctioning of a party requires specific findings that the party being sanctioned was aware of the wrongdoing." *Silverman v. Mutual Trust Life Ins. Co. (In re Big Rapids Mall Assocs.),* 98 F.3d 926, 932 (6th Cir.1996). In the present case, the plaintiffs allege in their amended complaint that Capital One "knowingly and willingly" and "systematic[ally]" filed claims in excess of the amounts to which it was entitled in chapter 13 proceedings nationwide. The plaintiffs further allege that even though in some cases objections to these improper claims have been filed and sustained, Capital One continues these "unlawful practices." If these allegations are true, sanctions are appropriate. Accordingly, to the extent that Capital One requests dismissal of the portions of the amended complaint which

characterizes Capital One's alleged practices as an abuse of the judicial process and requests sanctions for this abuse, the dismissal request will be denied.

### G. Standing of Plaintiffs.

█ Capital One argues that the plaintiffs do not have standing to assert their first, third, fourth and fifth claims "because they have not been harmed economically." Capital One observes that each debtor's plan provides for payment of a fixed amount to the chapter 13 trustee for 60 months and contends that these amounts are not affected by the amount of Capital One's proof of claim. In response, the debtors deny that they have not been harmed, noting that they have been put to the burden and expense of objecting to Capital One's claims. In the alternative, the debtors reject the notion that compensable injury must be established and argue that they have standing by virtue of the fact that they have properly objected to claims filed against them. The debtors also assert that the chapter 13 trustee and the trustee class "have all the standing that they need" because they have a duty under 11 U.S.C. § 704(5), as incorporated in chapter 13 cases by 11 U.S.C. § 1302(b)(1), to object to claims.

Because of the conclusions that the third (automatic stay) and fourth (violation of confirmation order) causes of action should be dismissed for failure to state a claim upon which relief can be granted, it is not necessary for the court to reach the standing issue on those claims. With respect to the first claim, as set forth above, the court concluded that the plaintiffs have no direct cause of action for violation of § 502(b)(2), but that the first claim may be asserted to the extent it constitutes an objection to Capital One's claims. The fifth claim seeks a turnover of monies wrongfully received by Capital One.

Although Capital One's motion to dismiss states that the "Plaintiffs lack standing," the memoranda of law submitted by Capital One only address the issue of whether the debtors have standing. There has been no specific allegation that the chapter 13 trustee lacks standing, either to object to proofs of claim or to seek monies wrongfully distributed. Clearly, the trustee has standing to object to claims, as the plaintiffs have noted, because one of the specified duties of a trustee under 11 U.S.C. § 704(5) is to, "if a purpose would be served, examine proofs of claims and object to the allowance of any claim that is improper." 11 U.S.C. § 1302(b)(1) provides that a chapter 13 trustee is to perform the duty specified in § 704(5).[11] Similarly, the chapter 13 trustee has standing to recover monies misdistributed by her. As observed previously in this memorandum, § 502(j) of the Bankruptcy Code appears to contemplate recovery actions by the trustee and one court has observed that a trustee has inherent power to recover overpayments to creditors derived from her fiduciary duties to account for the monies paid into the plan. See In re Stevens, 187 B.R. at 51–52.

Accordingly, the question for this court is whether chapter 13 debtors have standing to object to claims and seek turnover of overpayments to creditors. With respect to the objections to claims issue, Capital One argues that the debtors will sustain no economic harm from the alleged inflated claims because the plans are "base" plans, whereby the "base" is the

---

**11.** Section 704(5) is only one of several duties of a chapter 7 trustee imposed statutorily on a chapter 13 trustee. In its entirety, § 1302(b)(1) provides that "[t]he trustee shall perform the duties specified in sections 704(2), 704(3), 704(4), 704(5), 704(6), 704(7), and 704(9) of this title."

total amount the debtor will pay into the plan during its life. *See* 2 CHAPTER 13 BANKRUPTCY § 170.1 (3d ed.2000). After payment of priority and secured claims, the remaining balance of the base is distributed pro rata among the unsecured claims. Because plans of this type do not provide for a specified percentage to unsecured claims, unsecured claims which are higher than anticipated (or higher than lawfully permitted) will simply result in a lower dividend to all unsecured claims, and will have no effect on the debtor's obligation under the plan. In other words, the base amount remains the same. *Id.*

In actuality, the debtors' plans in the instant cases are not simple base plans but are instead, "base or percentage, whichever is greater" whereby unsecured creditors receive under the plan the required percentage or the balance of the base, "whichever is greater." *Id.* It has been recognized that debtors in these types of plans have "an incentive to seek the disallowance of objectionable claims" because if allowed unsecured claims turn out to be larger than indicated in the schedules to the point where the base amount will not pay the minimum percentage, the debtor will have to pay more to satisfy the percentage. *In re Pedersen,* 229 B.R. 445, 453 (Bankr. E.D.Cal.1999). Undoubtedly, in this situation, a debtor would have standing to object to claims.

There is no allegation in the amended complaint that Capital One's claims have rendered the debtors' plans unfeasible such that the base amounts will not pay the required percentages. Capital One alleges that the base amounts will not be affected by resolution of their claims and plaintiffs do not dispute this contention in their responsive memorandum of law. As such, the debtors' plans are no different than true "base" plans. The courts in two reported decisions have concluded that chapter 13 debtors have standing to object to claims although neither court addressed whether resolution of the objection would have any pecuniary effect on the debtor. *See In re Dooley,* 41 B.R. 31 (Bankr. N.D.Ga.1984); *In re Roberts,* 20 B.R. 914 (Bankr.E.D.N.Y.1982). Both of these courts based their ruling on 11 U.S.C. § 502(a) which provides that a proof of claim is deemed allowed "unless a party in interest ... objects." The *Dooley* court summarily concluded that the debtor was a party in interest and consequently had standing to object. *In re Dooley,* 41 B.R. at 32. Although *Roberts* appeared to be a base plan, the court accorded the debtor standing without addressing the issue raised herein, reasoning "there can be no question of the pecuniary interest of a Chapter 13 debtor in the claims which will have to be paid out under his plan." *In re Roberts,* 20 B.R. at 917.

In the only other reported decision on the subject, the court in *Silver Wings Aviation* held that a chapter 13 debtor did not have standing to object to administrative expenses "because the debtor's obligation would not be changed by the outcome—the debtor would have to pay the same amount into the plan and could not show injury based only on how funds paid to the trustee would be allocated among creditors." 1 CHAPTER 13 BANKRUPTCY § 56.2 (3d ed.2000) (citing *Holmes v. Silver Wings Aviation, Inc.,* 881 F.2d 939 (10th Cir. 1989)). Judge Lundin in his treatise CHAPTER 13 BANKRUPTCY is critical of the *Silver Wings Aviation* decision and its implication for base plans. *Id.* He notes that "notice of the filing of proofs of claim is not sent to all creditors. If the debtor is without standing to object, it is not obvious that any party is positioned to police administrative and other claims in Chapter 13 cases." *Id.* Judge Lundin opines that permitting the chapter 13 debtor to object to claims independent of the trustee makes

sense because "the debtor is best situated to know which claims are legitimate and in what amounts. The trustee must have the cooperation and attention of debtor's counsel and the debtor to effectively police the allowance of claims." *Id.*

This court concludes that, even in simple base cases, the chapter 13 debtor is a party in interest with standing under § 502(a) to object to claims. *See* 4 COLLIER ON BANKRUPTCY ¶ 502.02[2] (15th ed. rev.2001) ("Trustees and debtors in possession, as well as chapter 12 and chapter 13 debtors, are parties in interest that may object to proofs of claim."). As Judge Lundin observes "the debtor is best situated to know which claims are legitimate and in what amounts." Furthermore, as the treatise COLLIER ON BANKRUPTCY recognizes "[t]ypically, the trustee in [chapter 12 and 13 cases] does not view it as his or her role to object to particular claims except, perhaps, if they have been tardily filed." 4 COLLIER ON BANKRUPTCY ¶ 502.02[2][c] (15th ed. rev.2001). Thus, unless the debtor has standing, claims will go "unpoliced," in Judge Lundin's terminology, leaving creditors to pad their claims as Capital One is alleged to have done with no one challenging improper or even unlawful claims. And, while the debtor may not be affected monetarily by a claim disallowance, many chapter 13 debtors file chapter 13 as opposed to chapter 7 because they sincerely want to repay their creditors. Debtors with these moral objectives necessarily desire that the right creditors be paid in the correct amounts. To hold that these debtors must stand by without any authority to raise the inappropriateness of a claim is a misunderstanding and a perversion of the chapter 13 system, designed to facilitate the repayment of debt.

A corollary of the right to object to claims is the right to recover overpayments which have been inappropriately distributed. Typically these actions should be instigated by the chapter 13 trustee since the trustee is accountable for all the property received and the party responsible for making distributions to creditors. *See* 11 U.S.C. §§ 704(2), 1302(b)(1) and 1326(c). Although any sums recovered would be redistributed to other creditors rather than enuring to the benefit of the debtor, as noted above the chapter 13 debtors nonetheless have an interest in ensuring that their plan payments are properly distributed so that no creditor is allowed to retain funds which do not rightfully belong to it, whether distributed in error or due to the intentional deception of the creditor. As such, chapter 13 debtors, either individually or in conjunction with the chapter 13 trustee, have standing to recover on behalf of the estate any sums misdistributed.

## H. *Trustee's Authority Over Class Claims; Subject Matter Jurisdiction; and Alleged Procedural Defectiveness of Amended Complaint over Class Claims.*

The last three bases of Capital One's motion to dismiss are somewhat interrelated. Capital One alleges that the plaintiff trustee lacks standing to seek relief in any cases other than those in which she is appointed to serve. Similarly, Capital One maintains that this court lacks subject matter jurisdiction over cases pending outside of this district. Lastly, Capital One argues that the amended complaint is procedurally defective regarding venue because it seeks "to assume control over matters in cases pending before or adjudicated by other bankruptcy courts." The plaintiffs' response is that these issues are not ripe because they are really arguments about class certification which has not yet been raised. In the alternative, the plaintiffs assert that the arguments are

without merit. Each of these matters will be addressed in turn.

With respect to the issue of the chapter 13 trustee's standing, Capital One asserts that a chapter 13 trustee's authority is limited to the duties specified in 11 U.S.C. § 1302. In support of this proposition, Capital One cites *Stevens* wherein the court concluded that a chapter 13 trustee had overstepped the bounds of his authority and had affirmatively violated his statutory obligations when in order to collect an overpayment to a creditor in one case, the trustee withheld payments owed to the creditor in unrelated cases. *In re Stevens*, 130 F.3d at 1031. Capital One argues that because § 1302 of the Bankruptcy Code does not authorize a chapter 13 trustee to act on behalf of debtors or trustees in cases other than those in which the trustee is appointed to serve, the amended complaint must be dismissed as to any class relief sought by the trustee.

In essence, Capital One's argument is that because no Bankruptcy Code provision specifically authorizes a trustee to bring class actions on behalf of other trustees, no such authority exists. This court does not read the Bankruptcy Code so narrowly. At least one other court has permitted a trustee to bring a class action on behalf of other trustees as long as the requirements for standing under Fed. R.Civ.P. 23 have been met. *See Harris v. Beneficial Nat'l Bank (In re Weisbrod)*, 138 B.R. 869 (Bankr.S.D.Ohio 1992). In *Weisbrod*, a similar argument as that presented by Capital One was raised and rejected by the bankruptcy court. The defendant asserted in *Weisbrod* that the plaintiff trustee lacked standing to prosecute claims which are not property of the estate of which the trustee was appointed to serve. *Id.* at 871. The court stated that "[w]hether a party has standing to sue on his own behalf is a fundamental deter-minant of whether a party has standing to bring a class action." *Id.* The court concluded that because the plaintiff had "standing to sue defendant on his own behalf as a Chapter 7 trustee, he ha[d] standing to sue on behalf of all panel trustees nationally." *Id.* at 872. The *Stevens* decision cited by Capital One is distinguishable from the present case because the trustee in that case had no authority to withhold payments and was acting in contravention of his statutory obligation to make payments to creditors. *In re Stevens*, 130 F.3d at 1031 (citing 11 U.S.C. § 1329). In the present adversary proceeding, as previously noted, the trustee clearly has the authority to object to claims and seek overpayments from creditors. Consequently, the trustee has the authority to sue on behalf of similarly situated trustees.

■ Regarding the subject matter jurisdiction and venue issues, Capital One asserts that this court "has neither core nor related-to to jurisdiction over the claims as they relate to cases outside this District.... [A]s a matter of venue under 28 U.S.C. section 1334(e), this Court cannot unilaterally exercise jurisdiction over matters pending elsewhere." Capital One's argument strikes at the core of plaintiffs' nationwide class action since absence of jurisdiction would preclude the court from granting relief to any plaintiffs except those within this district. Because lack of jurisdiction precludes further action by this court, the issue must be examined, notwithstanding plaintiffs' contention that Capital One's argument is premature.

Both Capital One and the plaintiffs observe that the courts are split on the issue of whether a bankruptcy court may hear and adjudicate nationwide class actions. *Compare Bank United v. Manley*, 273 B.R. 229 (N.D.Ala.2001); *Singleton v. Wells Fargo Bank, N.A. (In re Singleton)*,

275 B.R. 189 (Bankr.D.R.I.2002); *Noletto v. Nationsbanc Mortgage (In re Noletto),* 244 B.R. 845 (Bankr.S.D.Ala.2000); *and Aiello v. Providian Fin. Corp. (In re Aiello),* 231 B.R. 693 (Bankr.N.D.Ill.1999) (subject matter jurisdiction exits), *with Williams v. Sears, Roebuck and Co. (In re Williams),* 244 B.R. 858 (S.D.Ga.2000); *In re Knox,* 237 B.R. at 693–95; *In re Nelson,* 234 B.R. at 539; *Lenior v. GE Capital Corp. (In re Lenior),* 231 B.R. 662 (Bankr.N.D.Ill.1999); *Wiley v. Paul Mason & Assocs. (In re Wiley),* 224 B.R. 58 (Bankr.N.D.Ill.1998); *and In re Simmons,* 237 B.R. at 676 (no jurisdiction). *See also In re Tate,* 253 B.R. at 664 (noting split of authority, but stating that it was unnecessary to resolve the split because class action limited to that district); *Coggin v. Sears, Roebuck and Co. (In re Coggin),* 155 B.R. 934, 936 (Bankr.E.D.N.C.1993) (court stated that it had authority to hear class action as a "core" proceeding, but noted that in any event the defendant had consented to entry of final orders or judgments by the bankruptcy judge).

As the district court in *Manley* observed, the argument that a bankruptcy court only has jurisdiction over cases actually before it is "facially compelling." *Manley,* 273 B.R. at 229. However, after careful consideration, this court concludes that the better reasoned view is that there is bankruptcy subject matter jurisdiction over class action claims invoking substantive bankruptcy rights. In this regard, the court finds the *Noletto* decision to be particularly instructive.

The *Noletto* court commenced its analysis by noting that the jurisdiction of the district courts over bankruptcy matters from which the bankruptcy court's jurisdiction is derived is established in 28 U.S.C. § 1334, which states in part: "the district courts shall have original but not exclusive jurisdiction of all civil proceed-

ings arising under title 11, or arising in or related to cases under title 11." *In re Noletto,* 244 B.R. at 848 (quoting 28 U.S.C. § 1334(b)). The court observed that this provision is phrased disjunctively, giving three alternative bases of bankruptcy jurisdiction: "arising under," "arising in" and "related to" proceedings. *Id.* at 849. Because the claims in the class action clearly fit within the "arising under" or "arising in" jurisdictional categories since they would be determined from the statutory provisions of the Bankruptcy Code, it was not necessary that the proceedings be related to the individual debtors before the court. *Id.*

The *Noletto* court also reasoned that:

If there were not nationwide jurisdiction over bankruptcy cases, there would be no need for the venue provisions. [Citations omitted.] The venue provisions are meaningless if the "home court" is the only forum with jurisdiction over bankruptcy proceedings. [Footnote and citations omitted.]

Bankruptcy jurisdiction was purposefully designed to encompass all of the issues debtors could encounter in a bankruptcy case. The Court found no evidence that debtor class actions were envisioned by the drafters, but the jurisdictional statutes were written in a manner to cover even these actions. This is appropriate. Otherwise there might be no affordable universal redress for creditor bankruptcy abuses which could arise. [Citations omitted.]

*Id.* at 849–50.

The *Noletto* court addressed the contention that 28 U.S.C. § 1334(e) limits jurisdiction over a cause of action owned or brought by a debtor to the bankruptcy court for the district in which that debtor's case is pending. *Id.* Section 1334(e) provides: "The district court in which a case under title 11 is commenced or is

pending shall have exclusive jurisdiction of all the property, wherever located, of the debtor as of the commencement of such case, and of property of the estate." After a detailed analysis of the issue, the court explained that if § 1334(e) were read expansively to require the home court to determine all issues regarding property of the estate, this interpretation would be inconsistent with the bankruptcy venue provisions of 28 U.S.C. § 1409(b) and (d), would render 28 U.S.C. § 1334(c) "virtually useless," would give 28 U.S.C. § 1452 "virtually no meaning," and ultimately "would leave bankruptcy courts in gridlock." *Id.* at 852–54. "[B]ased on the statutory scheme, the legislative history and the nature of bankruptcy practice, [the court concluded that] § 1334(e) is limited to giving the 'home court' exclusive jurisdiction over *in rem* matters" and, accordingly, " § 1334(e) does not make the 'home court' the exclusive forum to hear debtor complaints regarding violations of the Bankruptcy Code." *Id.* at 852–54.

The *Noletto* court noted that the fact § 1334(e) essentially limits *in rem* claims against estate property to the district in which a debtor's "case under title 11 is commenced or is pending" illustrates:

> Congress knew how to limit jurisdiction over specific matters to the district in which the debtor's bankruptcy case is pending. Congress chose not to do so with respect to all bankruptcy proceedings. To the contrary, district courts have jurisdiction over bankruptcy proceedings, regardless of where the debtor's case is pending, and these proceedings "shall be referred to the bankruptcy judges for the district," once again, regardless of whether the district is the one in which the debtor's bankruptcy case is pending.

*Id.* at 856 (citing 28 U.S.C. §§ 157(a) and 1334(b)).

The *Noletto* court observed that three of the decisions holding that the bankruptcy court is without subject matter jurisdiction were decided by the same bankruptcy judge and also involved state law claims. *Id.* at 857 (referring to *In re Wiley, In re Lenior* and *In re Knox* as cited above). As such, these cases were in a different jurisdictional posture than the class action before the *Noletto* court which was a core proceeding involving federal bankruptcy issues. *Id.*

Like the class action in *Noletto*, the present adversary proceeding is a core proceeding because it concerns substantive bankruptcy issues which could only arise in the bankruptcy context: an objection to a claim, the requested turnover of overpayments by a chapter 13 trustee to a creditor, and the consideration of whether the creditor's actions in systematically filing inflated claims constitute an abuse of the bankruptcy process. *See* 28 U.S.C. § 157(b)(2)(A),(B),(C),(E) and (O). Furthermore, this court finds it instructive that the Sixth Circuit Court of Appeals has cited with approval, albeit in a different context, *Noletto's* conclusion that " § 1334(e) must be read narrowly in order to avoid a conflict with the other bankruptcy venue provisions." *Blachy v. Butcher,* 221 F.3d 896, 909 (6th Cir.2000) (citing *In re Noletto,* 244 B.R. at 852–53, for proposition that "a bankruptcy court can share its jurisdiction with other courts").

This court is also persuaded by the fact that Rule 7023 of the Federal Rules of Bankruptcy Procedure incorporates Fed. R.Civ.P. 23. As stated by the district court in *Manley:*

> It is a truism to say that rules of procedure cannot expand the subject matter jurisdiction of courts. Appellant's understanding of subject matter jurisdiction, however, requires one to believe that Congress intended to, *inter alia,*

categorically foreclose debtor class actions arising under the bankruptcy code. When coated with Rule 7023, such an already bitter pill becomes impossible to swallow.

*Manley,* 273 B.R. at 250.

Lastly, with respect to Capital One's assertion that the amended complaint is procedurally defective in that this district is not the proper venue to adjudicate matters in cases pending in other courts, this court again finds guidance from *Noletto.* The *Noletto* court found this argument premature along with the assertion that exercising jurisdiction could possibly require this court to collaterally attack other courts' final orders. *In re Noletto,* 244 B.R. at 854–857. The court concluded that both of these issues should be taken up in conjunction with class certification because "class certification issues include 'the interest of members of the class in individually controlling the prosecution of separate actions and the desirability or undesirability of concentrating the litigation of the claims in the particular forum'" as well as issues concerning "the extent and nature of any litigation concerning the controversy already commenced by or against members of the class" and "the difficulties likely to be encountered in the management of a class action." *Id.* (quoting Fed.R.Civ.P. 23(b)(3)). This court agrees with *Noletto* on this point and will accordingly reserve at this time consideration of this issue. With regard, however, to Capital One's request for dismissal of the class claims for lack of subject matter jurisdiction and otherwise lack of the trustee to assert the class claims, the motion to dismiss will be denied.

### III.

In summary, the first claim of plaintiffs' amended complaint fails to state a claim to the extent it is construed as asserting a private right of action by the plaintiffs for a violation of 11 U.S.C. § 502(b)(2). The second, third and fourth claims of the plaintiffs' amended complaint fail to state a claim as a matter of law, along with the unfair discriminatory treatment and material misrepresentation allegations in the sixth claim. Accordingly, Capital One's motion to dismiss will be granted in part, dismissing these aspects of the amended complaint. In all other respects, the motion to dismiss will be denied. Capital One, however, may raise the venue issue again in response to any motion by plaintiffs for class certification. An order will be entered to this effect contemporaneously with the filing of this memorandum opinion.